# EXHIBIT - 1 - (A) & (B)

GROUNDS Raised in Petitioner's Appellate brief and Pro-Se Supplemental brief.

(A) Appellate brief grounds.

(B) Pro-Se supplemental brief grounds.

1 (A)

Summations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Jury Charge, Deliberations, and Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARGUMENT

POINT I

APPELLANT'S GUILT OF FELONY-MURDER WAS NOT PROVEN
BEYOND A REASONABLE DOUBT AND HIS CONVICTION WAS
AGAINST THE WEIGHT OF THE EVIDENCE, SINCE THE LYNCHPIN
OF THE PEOPLE'S CASE WAS THE INCREDIBLE AND MANIFESTLY
UNRELIABLE TESTIMONY OF A SINGLE WITNESS, WHO CLAIMED
THAT, DESPITE MINIMAL LIGHTING AND HER CONSUMPTION OF
A BOTTLE OF ALCOHOL, SHE COULD IDENTIFY THE MASKED,
NIGHT-TIME ROBBER, THOUGH HER COMPANIONS CLOSER TO
THE ROBBERY COULD NOT.  U. S. CONST., AMEND. XIV; N.Y.
CONST., ART. I, §6. Jackson v. Virginia, 443 U.S. 307 (1976);  People v.
Bleakley, 69 N.Y.2d 490 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

POINT II

THE COURT DENIED APPELLANT DUE PROCESS BY ADMITTING
IDENTIFICATIONS STEMMING FROM:   (A) AN UNDULY
SUGGESTIVE PHOTO ARRAY IN WHICH APPELLANT WAS THE
ONLY SUBJECT WHO WORE THE BEIGE-TYPE COLOR WITNESSES
SAID THE ASSAILANT WORE; AND (B) AN UNDULY SUGGESTIVE
LINEUP IN WHICH THE POLICE USED FILLERS WHO WERE
OBVIOUSLY MUCH OLDER THAN THE 20-YEAR-OLD APPELLANT
AND APPELLANT WAS THE ONLY PARTICIPANT WEARING THE
SIGNATURE BEIGE DESCRIBED BY EYEWITNESSES. U.S. CONST.,
AMEND. XIV; N.Y. CONST., ART. I, §6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

POINT III

THE PEOPLE'S FAILURE TO PRODUCE THE COLOR PHOTO ARRAY
VIEWED BY THEIR SOLE IDENTIFICATION WITNESS, AND
ADMITTED IN EVIDENCE AT THE WADE HEARING DENIED
APPELLANT EFFECTIVE APPELLATE REVIEW OF HIS CLAIM THAT
THE ARRAY WAS UNDULY SUGGESTIVE. U.S. CONST., AMEND.
XIV; N.Y. CONST., ART. I, §6; C.P.L. §450.10; PEOPLE V. JACKSON,
2002 W.L. 31319549 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

POINT IV

THE COURT DENIED APPELLANT DUE PROCESS AND A FAIR
TRIAL AND MATERIALLY IMPAIRED HIS ALIBI AND
MISIDENTIFICATION DEFENSES BY (A) BARRING DEFENSE
COUNSEL FROM ELICITING THAT HIS MAIN ALIBI WITNESS HAD
INFORMED THE POLICE OF APPELLANT'S WHEREABOUTS AT THE
TIME OF THE SHOOTING BEFORE SHE KNEW WHEN THE
SHOOTING OCCURRED; AND (B) INCOMPLETELY SUMMARIZING
DEFENSE COUNSEL'S MISTAKEN IDENTIFICATION DEFENSE, IN
THE JURY CHARGE. U.S. CONST., AMENDS. VI, XIV; N.Y. CONST.,

ART. I, §6; C.P.L. §300.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

A. The Court's Refusal to Permit Defense Counsel to Elicit That Appellant's
Mother Had Informed the Police of Appellant's Whereabouts at the Time of
the Shooting Before She Knew When the Shooting Took Place . . . . . . . . . . . . . . 43

B. The Court Unfairly Marshaled the Evidence and Undermined Appellant's
Misidentification Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

1 (b)

# TABLE OF CONTENTS

PAGES

STATEMENT PURSUANT TO CPLR 5531 ............................. 1

PRELIMINARY STATEMENT ....................................... 2

STATEMENT OF FACTS .......................................... 2i

QUESTIONS PRESENTED ......................................... 2ii

**ARGUMENT**

POINT I:

APPELLANT WAS DEPRIVED HIS CONSTITUTIONAL RIGHT
TO PRESENT EVIDENCES AND WITNESSES ON HIS
BEHALF, AND HIS CONSTITUTIONAL RIGHT TO A
FAIR TRIAL BY A COMBINATION OF PROSECUTORIAL
BRADY VIOLATION AND THE COURT'S BIAS HANDLING
OF SUCH.................................................... 3

POINT II:

APPELLANT WAS DEPRIVED OF HIS STATE AND
FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR
TRIAL BY THE ACTIONS OF THE TRIAL
JUDGE IN DENYING APPELLANT THE ABILITY
TO MAKE AND PRESERVE MATTERS FOR THE
APPELLATE COURT'S REVIEW.................................. 22

POINT III:

APPELLANT WAS DEPRIVED OF HIS STATE AND
FEDERAL CONSTITUTIONAL RIGHTS TO A
FAIR TRIAL AND DUE PROCESS OF LAW
BY THE PROSECUTOR'S KNOWINGLY AND
WILLFULLY IMPROPER USE OF EVIDENCE
WHICH WAS PATENTLY FALSE................................. 27

EXHIBIT-2

# APPELLATE ADVOCATES

2 RECTOR STREET - 10TH FLOOR, NEW YORK, NEW YORK 10006
PHONE: (212) 693-0085    FAX: (212) 693-0878

ATTORNEY-IN-CHARGE
LYNN W. L. FAHEY

ASSISTANT ATTORNEY-IN-
CHARGE
BARRY S. STENDIG

SUPERVISING ATTORNEYS
WINSTON MCINTOSH
DAVID P. GREENBERG
ERICA HORWITZ
PAUL SKIP LAISURE

ALEXIS A. ASCHER
SARAH J. BERGER
STEVEN R. BERNHARD
DENISE A. CORSI
TIGRAN W. ELDRED
M. CHRISTOPHER FABRICANT
JONATHAN F. GARVIN
JOHN GEMBILL
MELISSA S. HORLICK
BERTHAND J. KAHN
WILLIAM G. KASTIN
JONATHAN M. KRATTER
WARREN S. LANDAU
BARBARA LERNER
JOSHUA M. LEVINE
REYNA E. MARDER
LISA NAPOLI
TONYA PLANK
DENICE POWELL
MAE C. QUINN
YVONNE SHIVERS
JAY L. WEINER

OF COUNSEL
RACHEL ALTSTEIN
MICHELLE MOGAL

February 25, 2004

Honorable Carmen Beauchamp Ciparick
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, NY 12207-1095

Re: <u>People</u> v. <u>Shiloh Hylton</u> - Leave Application

Honorable Judge Ciparick:

I am writing to urge that you grant the leave application pending before you in this case, which presents the following leaveworthy issues, among others set forth in appellant's Appellate Division brief: 1. In a pure identification case in which the Appellate Division held that the pretrial lineup was unduly suggestive, and no independent source hearing was held, did the Second Department improperly affirm appellant's conviction, when it ruled that there was no substantial likelihood of misidentification  merely because the sole eyewitness had tentatively identified appellant in a prior photo array and trial evidence indicated that the witness had an opportunity to view the night-time robber before, during, and after the robbery; and 2. Was appellant denied due process by the admission of  identifications stemming from an unduly suggestive lineup in which appellant was the only participant wearing the signature beige described by eyewitnesses.  U.S. Const., Amend. XIV; N.Y. Const., Art. I, §6.

Disagreeing with the trial court, the Appellate Division ruled that the pretrial lineup was unduly suggestive because appellant was the only participant who wore the signature beige described by eyewitnesses. Nevertheless, the court refused to reverse, holding that the flawed lineup did not create a "substantial likelihood of misidentification" because the sole eyewitness had "had the opportunity to view the defendant before, during, and after the shooting"  and had earlier viewed a photo array and said that appellant "look[ed] like" the beige-attired robber. The Second Department affirmed the conviction although the witness did not testify at the <u>Wade</u> hearing, the trial court never held an independent source hearing, and there was no finding of harmless error.

The Second Department's confused ruling evidences a need for this Court's guidance. If the court intended, by its unclear and inexact language, to hold that the People proved independent

source, it parted course with this Court's holdings in People v. Burts, 78 N.Y.2d 20 (1991), People v. Riley, 70 N.Y.2d 523 (1987), and People v. Rodriguez, 55 N.Y.2d 720, 721-22 (1981) and their progenitors and progeny, which demand an independent source hearing separate from and preceding the trial, require the identifying witness to testify at the hearing, and preclude reliance upon trial testimony to support or attack a pretrial suppression ruling. On the other hand, if the Second Department meant to suggest that the factors it cited obviated any need for suppression of the suggestive lineup, it conflated federal and state due process analysis and created an unprecedented exception to People v. Adams, 53 N.Y.2d 241, 250-51 (1981), in which this Court held that an unduly suggestive lineup must be suppressed and independent source analysis could be used to determine only whether an in-court identification would be permitted. Finally, two of the Appellate Division's citations suggest that the court may be clinging to the notion that a suggestive identification is merely a confirmation if it follows an earlier identification. But in People v. Brown, 86 N.Y.2d 728 (1995), this Court held that there was no such category of confirmation.

No matter how the Appellate Division's decision was intended, or is construed, it is inconsistent with state due process identification law and this Court's holdings. The Second Department's maverick ruling is bereft of any valid theoretical underpinning and, if permitted to stand, will confuse the lower courts, which rule on like issues on a daily basis. This appeal is an ideal vehicle with which to clarify a court's analysis when faced with a suggestive lineup and presents the Court an opportunity to eliminate a confounding precedent which stands as an unjustifiable and gaping exception to Adams and Burts. We respectfully submit that the Court should grant leave in appellant's case to consider these issues, as well the others set forth in appellant's Appellate Division brief, including the federal and state constitutional issues outlined at pages ii-iii, 2-3, and 29-54.

## The Robbery, the Suggestive Lineup, and the Trial

Appellant was arrested in connection with the death of Wendell Rosiclair, who was shot during an April 4, 1999 night-time robbery. The People claimed that the robbers spotted a group of friends at a dance club, followed them home, and robbed them when they disembarked from their cars. The friends, including Rosiclair's girlfriend, Rebecca Etoria, said that one of the robbers, a youth in his late teens to early twenties, wore a beige jacket, pants, and cap, the cap lowered to obscure his face, as well as a beige bandanna-mask, leaving only a sliver of his face uncovered.

Etoria viewed a photo array and, according to police witnesses, said that appellant "looked like" the masked robber. Several days later, she identified appellant from a lineup at which only he wore beige pants and a shirt punctuated with beige. The trial court denied appellant's motion to suppress Etoria's identification and did not conduct an independent source hearing in name or substance. Etoria did not testify at the Wade hearing.

At trial, it was established that the night-time robbers' backs were to the lone street lamp illuminating the area. As well, most of the friends, including Etoria, had consumed a great deal of alcohol at the darkly-lit club. Etoria, unlike most of the others, viewed the unfolding robbery from the far side of one of the cars in which the group had traveled. She was about 17 to 18 feet from the location of the shooting, further away than most of the friends, and the car in which she sat had

darkly tinted windows. Etoria testified about her lineup identification and identified appellant in court.

When the police arrested appellant days after the robbery, they confiscated a beige Yankee cap, beige bandanna, and some party flyers similar to those distributed at the club on the night of the incident. Although others described the beige-clad robber's attire and said that the bandanna and cap the police took from appellant looked like the one the beige-clad robber wore, no one aside from Etoria identified appellant as the robber. And no physical evidence linked him to the robbery.

At trial, Etoria testified about the lineup identification and made an in-court identification and appellant presented alibi evidence. The court instructed that the jury might consider Etoria's lineup identification, which occurred days after the shooting and 17 months before trial, when her memory of the events might have been fresher, as corroboration for her in-court identification. After deliberating three days and requesting and receiving a readback of Etoria's identification testimony, the jury convicted appellant of felony-murder.

## The Appellate Division Refuses to Reverse the Conviction Although it Finds Appellant's Lineup Unduly Suggestive

The Second Department found that appellant's lineup was unduly suggestive because "[appellant] was the only person in the lineup wearing the beige color which had figured prominently in the witness' description of one of the perpetrators." People v. Hylton, 2 A.D.3d 459, __ (2d Dept. 2003). Nevertheless, the court refused to reverse appellant's conviction because "[t]he witness who identified [appellant] at the lineup had identified [him] at a prior photographic array and also had the opportunity to view [him] before, during, and after the shooting." Hylton, 2 A.D.3d at ___. In support of its holding, the court cited 4 cases. Two held that reversal was not required despite suggestive photo identifications, because the identifying witnesses had had a good opportunity to view the perpetrators before and during the crimes. One of the cases held that a suggestive identification procedure which followed an earlier unassailable identification was confirmatory. The fourth held that a challenged showup was confirmatory because the defendant was known to the witness.

## The Appellate Division's Confusing Distortion of Due Process Identification Analysis

An analysis of the problems posed by the Second Department's affirmance at bar must begin with a review of well-recognized due process principles. It is well-known that "'(t)he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor--perhaps it is responsible for more such errors than all other factors combined.' (citation omitted)." United States v. Wade, 388 U.S. 218, 228-29 (1967). Therefore, both the federal and state constitutions require that when the police determine to conduct a lineup, they must do so in a manner that does not single out an accused and is not unduly suggestive. Manson v. Brathwaite, 432 U.S. 98 (1977); Stovall v. Denno, 388 U.S. 293 (1967); People v. Chipp, 75 N.Y.2d 327, 336, cert. denied, 498 U.S. 833 (1990); People v. Adams, 53 N.Y.2d 241, 250-51 (1981). Under New York law, a pretrial identification is unduly suggestive if it "creates a substantial likelihood that [the accused] would be singled out for identification." Chipp, 75 N.Y.2d at 336. In determining whether the pretrial identification is unduly suggestive, the focus is on the identification procedure itself. See Adams, 51 N.Y.2d at 250-52.

Although the People may try to prove independent source, such a showing permits them only to preserve the possibility of an in-court identification; it would not "unsuppress" an unduly suggestive identification. Id. See also People v. Foster, 200 A.D.2d 196, 199 (1st Dept.), appeal withdrawn, 83 N.Y.2d 1003 (1994). Independent source factors under New York law include "totality of the circumstances" factors under federal law. See Manson, 432 U.S. at 114-17; Neil v. Biggers, 409 U.S. 188, 199 (1972); Foster, 200 A.D.2d at 200. See generally M. Hibel, New York Identification Law, 227-32 (2001). One, but only one, of the factors is whether the witness validly identified the accused before the suggestive identification. See Wade, 388 U.S. at 241; People v. Carney, 212 A.D.2d 721, 722 (2d Dept. 1995) (identification prior to suggestive one militated in favor of independent source); People v. Reyes, 151 A.D.2d 437 (1st Dept. 1989) (failure to identify defendant at lineup the day before suggestive showup counseled against independent source finding).

At bar, the Appellate Division plainly confused the law on independent source and its reliance upon witness Etoria's opportunity to view the beige-clad robber was unsound. The "substantial likelihood of misidentification" language the court employed is independent source language. See People v. Bell, 63 N.Y.2d 796, 798 (1984), aff'g, 94 A.D.2d 894, 894 (3d Dept. 1983); Adams, 53 N.Y.2d at 249-52; see also Hibel, New York Identification Law, at 147-48. But the trial court never rendered independent source findings or held an independent source hearing and identifying witness Etoria did not testify at the Wade hearing. The Appellate Division could only have garnered information about her opportunity to observe from the trial testimony, something this Court's rulings prohibit. See People v. Rodriguez, 55 N.Y.2d 720, 721-22 (1981) (absent motion to reopen Wade hearing, trial testimony cannot be relied upon to support appellate claim). Thus, the Second Department's holding creates a gaping exception to People v. Burts, 78 N.Y.2d 20 (1991) and People v. Riley, 70 N.Y.2d 523 (1987) and their progenitors and progeny, which demand an independent source hearing separate from and preceding the trial, and require the identifying witness to testify at the hearing. Because the court found independent source without an independent source hearing at which Etoria would have been required to testify, appellant's federal due process rights were also violated.

If the Appellate Division's decision is construed as finding independent source, a second equally significant problem is presented. Under New York law, an independent source finding would not "unsuppress" the suggestive lineup. See Adams, 53 N.Y.2d at 249-52; Foster, 200 A.D.2d at 199; see also Hibel, New York Identification Law, at 147-48. Thus, even if the court had been justified in finding independent source, the lineup identification was inadmissible, but was admitted at trial. Therefore, the Second Department was required to reverse unless it the error was harmless. But, after finding the lineup suggestive, the court did not explicitly engage in harmless error analysis or state that it found the error harmless. Nor could it have found the error harmless in this one-witness identification case involving a night-time robbery by a masked robber and an identification by a witness who observed the events from a car with tinted windows and had had a great deal to drink. The court's failure to conduct harmless error analysis violated Chapman v. California, 386 U.S.18 (1967) and People v. Crimmins, 36 N.Y.2d 230 (1975).

An equally plausible interpretation of the Appellate Division's holding is that it declined to suppress even the lineup, despite finding suggestiveness, because the court determined that, under the totality of the circumstances, there was no "substantial likelihood of misidentification. Hylton, 2 A.D.3d at ___. But if the court's decision was so intended, or is so construed, it erroneously conflates federal and state due process analysis.

A finding of undue suggestiveness, has differing consequences under federal and state

constitutional law.  Under federal law, a suggestive pretrial identification will not be suppressed if, after considering the totality of the circumstances, the procedure possessed sufficient indicia of reliability and that there was not a "very substantial likelihood of irreparable misidentification." Manson, 432 U.S. at 114-17.  If totality-of-circumstance analysis yields the conclusion that the attacked identification procedure was sufficiently reliable, the witness would be permitted to make an in-court identification and the pretrial procedure itself would not be suppressed. Id. at 114.  More than 20 years ago, however, this Court declared that the New York State Constitution required more. In Adams, 53 N.Y.2d at 241, the Court ruled that the potential for miscarriages of justice required that unduly suggestive pretrial identifications be suppressed without any further showing. Id. at 249-50.  It held that a jury should not be permitted to rely upon a suggestive pretrial identification to bolster an in-court identification in which it lacked confidence.  And such a flawed identification could not be permitted to take the place of an in-court identification the witness could not make. Id. at 250-52.  Thus, Adams specifically rejected the federal rule.  If the Second Department's confusing and unclear ruling was intended, or is construed, to "unsuppress" a suggestive lineup upon totality-of-circumstances analysis that favors the prosecution, the court has created a troubling and amorphous exception to Adams, 53 N.Y.2d at 241, that has no valid underpinning.  The Second Department's conflation of suppression analysis with independent source analysis is dangerous.  But it is far from unique (e.g., People v. Moore, 264 A.D.2d 693 [1st Dept. 1999]; People v. Munoz, 223 A.D.2d 370 [1st Dept. 1996]; People v. Ortega, 214 A.D.2d 591 [2d Dept. 1995]; People v. Lau, 171 A.D.2d 581 [1st Dept. 1991]; People v. Frederickson, 122 A.D.2d 580 [4th Dept. 1986] [all employing substantial "likelihood" or "risk" of irreparable misidentification" language or reliability analysis]).

The court's decision presents a final analytical problem.  The language the Appellate Division employed is often used to justify a holding that a particular procedure was confirmatory in the first place.  See generally People v. Collins, 60 N.Y.2d 214, 220 (1983).  Moreover, two of the cases the court cited involved confirmations.  The confirmation in People v. Darnell, 146 A.D.2d 583, 584 (2d Dept. 1989) was an assertedly suggestive photo identification that followed a nonpolice sponsored photo identification.  People v. Lizardi, 166 A.D.2d 673 (2d Dept. 1990) involved a traditional confirmation, a showup identification by a witness who knew the defendant.  Of course, confirmations are not subject to suppression.  See People v. Rodriguez, 79 N.Y.2d 445 (1992); People v. Wharton, 74 N.Y.2d 921 (1989); People v. Gissendanner, 48 N.Y.2d 543 (1979).

But this Court has recognized only two types of confirmations.  Rodriguez, 79 N.Y.2d at 449. The first is the civilian confirmation.  See id.; Collins, 60 N.Y.2d at 214.  The second is the police confirmation.  See Wharton, 74 N.Y.2d at 921.  The common denominator of these confrontations is that they are "not of a kind ordinarily burdened or compromised by forbidden suggestiveness." Id. at 922.  The police confirmation is applicable to trained police officers viewing a suspect contemporaneously with an arrest.  The lay confirmation applies to a witness who knows the defendant.  In these confrontations, there would be no due process concern because the witness would be "impervious to police suggestion." Rodriguez, 79 N.Y.2d at 451.

Although this Court recognized but two categories of confirmations, the Appellate Divisions began recognizing a third one, when the identifying witness had previously identified the defendant in a valid procedure or one that was not subject to attack.  Thus, the Appellate Divisions, particularly the Second Department, labeled as confirmations a variety of lay second identifications. Confirmations included precinct showups conducted after spontaneous identifications, e.g, People v. Mack, 203 A.D.2d 131, 132 (1st Dept. 1994); People v. Harris, 171 A.D.2d 882, 883 (2d Dept. 1991), or after a crime scene showup, e.g., People v. Nixon, 162 A.D.2d 225, 225 (1st Dept. 1990),

People v. Fulmore, 133 A.D.2d 169, 170 (2d Dept. 1987), or both, People v. Branigan, 207 A.D.2d 459 (2d Dept. 1994) (spontaneous identification, then on-scene showup, then precinct showup); People v. Wilkins, 190 A.D.2d 874, 875-76 (2d Dept. 1993) (same procedures - precinct showup did not require Wade hearing). See also People v. Reeves, 156 A.D.2d 934 (4th Dept. 1989); Darnell, 146 A.D.2d at 583 (after nonpolice arranged viewing of newspaper photo).

In People v. Brown, 86 N.Y.2d 728 (1995), this Court explicitly disapproved of this third category of confirmation.   Nevertheless, the Appellate Divisions, particularly the Second Department, continued to recognize the same third category of confirmation post-Brown. Thus, in People v. Anderson, 260 A.D.2d 387, 387-88 (2d Dept. 1999), the Second Department ruled that on-scene police-arranged showups were merely confirmatory of earlier pointouts. Accord. People v. Kershaw, 256 A.D.2d 590, 591 (2d Dept. 1998) (grand jury driver's license photo identification deemed confirmatory of an earlier self-arranged photo-identification); People v. Torres, 223 A.D.2d 741, 742 (2d Dept. 1996) (precinct identification held confirmatory of on-scene point-out; court cited pre-Brown cases). And in People v. Chambers, 226 A.D.2d 284, 285 (1st Dept. 1996), the First Department held that a precinct showup was merely confirmatory of earlier post-crime viewings of the defendant. Given this, and the two confirmation citations in the court's decision, there is reason to believe that the Appellate Division remains unconvinced that there is not a third category of confirmation. Its holding has enormous potential for muddying the waters for other courts.

<u>Court of Appeals Jurisdiction</u>

This Court has jurisdiction to review appellant's legal claim which is preserved for review. Defense counsel specifically argued that the lineup was suggestive and, as a result, Etoria's identification should be suppressed and in-court identification precluded.   Enclosed are transcript pages relevant to preservation.

For these reasons, and those set forth in our brief, we respectfully submit that leave should be granted. I respectfully request a hearing on this application. If there is any further information I may provide, I would be happy to do so.

Respectfully yours,


WARREN S. LANDAU
Staff Attorney

WL:lsw
encls.

cc:   Hon.   Charles J. Hynes, District Attorney of Kings County, Attorney for Respondent, Renaissance Plaza, 350 Jay Street, Brooklyn, NY 11201-2908, ATT: Appeals Bureau, ADA Solomon Neubort, Esq. (sans enclosures)

Hon. Stuart M. Cohen, Clerk of the Court

EXHIBIT-3(A)

## AFFIDAVIT OF SERVICE

State of New York )
               )ss:
County of Dutchess)

I **Shiloh Hylton**, being duly sworn, deposes and says:

That I have placed and submitted true and exact copies of the following documents: A notice of Motion and Affidavit in support of said motion, Pursuant to CPL § 440.10(1)(h), within the United States Mail Depository Box of the Green Haven Correctional Facility Located at P.O. Box 4000 Stormville New York, 12582., To be served upon the parties listed below:

        TO: District Attorney
        Kings County
        350 Jay Street
        Brooklyn, New York 11201

                                      Shiloh Hylton
                                        0045748

Sworn to before me this
26th day of May, 2005.

_____
        NOTARY PUBLIC

        **PAUL J BRAUN**
        Notary Public State of New York
        Qualified in Dutchess County
        Commission # 01BR5078688
        Commission Expires Dec 23, 2006

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TEAM PART
————————————————————————————— X

The People of the State of New York,

                                    Responsend.          NOTICE   OF   MOTION   TO
                                                         VACATE JUDGMENT CPL
                                                         § 440.10 (1)(h)

                    -against-                            Ind. No. 3354/99

Shiloh Hylton,

                                    Defendant.
————————————————————————————— X

SIR:

      **PLEASE TAKE NOTICE**, that upon the annexed affidavit
of Shiloh Hylton, being duly sworn on the _26_ day of May, 2005.,
and the attached Exhibits thereto, and upon all proceedings
previously held herein, defendant will move this Court at a
Criminal Term, Part thereof, at the Courthouse Located at 360
Adams Street, Brooklyn, New York 11201., on the ___ day of July
2005., at 9:30 a.m., or as soon thereafter as counsel may be heard,
for an order pursuant to Criminal Procedure Law, §440.10(1)(h)
vacating the judgment entered against the above named defendant
on the 17 day of October, 2000., on the following grounds; (h)
the judgment was obtained in violation of defendant's right under
the State and Federal Constitutions; An Order, Pursuant to New
York Criminal Procedure Law § 440.30(5), to produce the defendant
at any hearing to be conducted for the purpose of determining
this motion; and for such other and further relief as the Court
may deem just and proper.

Dated: May 2005.
Dutchess, New York 12582

Respectfully Yours,
*Shiloh Hylton* 00A5948
Green Haven Corr.
P.O. Box 4000
Stormville NY 12582

TO: District Attorney
    Kings County
    350 Jay Street
    Brooklyn, New York 11201

SUPREME COURT OF THE STATE OF NEW YOUR
COUNTY OF KINGS: CRIMINAL TERM
——————————————————————————X

The people of the State of New York,

                          Respondent,        **AFFIDAVIT IN SUPPORT
                                             OF MOTION TO VACATE
                                             JUDGMENT          PURSUANT
                                             TO CPL § 440.10(1)(h)**

          -against-                          **Ind. No. 3354/99**

Shiloh Hylton,

                          Defendant.
——————————————————————————X

STATE OF NEW YORK )
                  )ss:
COUNTY OF DUTCHESS)


I **Shiloh Hylton**, being duly sworn, depose and say that:


        1. I am the defendant and with the assistance of an
inmate law clerk at Green Haven Correctional Facility, in
accordance to provisions of Directive 4483(E) and **Bounds v. Smith,**
430 U.S. at 831, 97 S.Ct. at 1499-1500, make this affidavit in
support of the instant application for an Order pursuant to
Criminal Procedure Law § 440.10(1)(h), to vacate the judgment
of conviction entered on October 17, 2000, upon the grounds that
(h) judgment obtained in violation of defendant's rights under
the State and Federal Constitutions.

        2. This affidavit is made both upon personal knowledge
and information and belief, the source of belief being that (1)
I am the defendant in the herein entitled action; (2) Defendant
tried on several occasions to contact the attorney that

represented defendant at trial to ask him why he did not call to testify, the prosecution confidential informer who initially identified defendant as one of the men who was at the club where the incident originated from; when said witness, whom when called to testify by the District Attorney, informed the prosecutor that he would reverse his statement and identification of defendant that was given to the police stating defendant was the suspect in the instant crime. This was the initial information that was used to form the basis for probable cause to arrest defendant. Defendant was arrested in connection with the death of Wendell Rosiclair, who was shot during an April 4, 1999., night time Brooklyn robbery.

3. This criminal action was initially commenced by the filing of a local criminal court accusatory instrument by various members of the New York City Police Department members. The defendant was indicted by Kings County Grand Jury by Indictment number 3354/99., on June 11, 1999; charging defendant with two counts of Murder in the Second Degree (P.L. 125.25[2], [3]), three counts of Robbery in the First Degree (P.L. § 160.15[1], [2], [4]), one count of Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03[2]), and one count of Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02[4]). The defendant was arraigned and he entered a plea of not guilty. Trial was held in the instant matter and on September 22, 2000 the defendant was found guilty of Murder in the second degree (P.L. § 125.25[3]). Defendant was sentenced to an indeterminate prison term of 20 years to life.

4. A timely notice of appeal was duly filed and on March 2, 2001., The Appellate Division Second Department granted leave to appeal as a poor person on the original papers and typewritten brief and assigned **Lynn W.L. Fahey** to represent defendant on appeal. On or about January 27, 2003., type written briefs were submitted to the Appellate Division by both Defendant and Respondents; Furthermore, the Appellate Division granted permission for Defendant to submit a Supplemental Brief. On November 10, 2003 Appellate Division Affirmed Defendant conviction. On or about March 16, 2004., the New York Court of Appeals denied defendant entry.

5. To establish that a defendant was denied effective assistance of trial counsel, such violation is normally asserted in the context of a Criminal Procedure Law, Section 440.10 motion. In accordance to Criminal Procedural Law § 440.10, a motion to vacate the judgment is the proper procedure to address said claim. People v. Blaylock 697 N.Y.S. 2d 522; People v. Clark 254 A.D. 2d 299 (2d Dept); People v. Roberts 89 A.D. 2d 912; People v. Gerner 99 A.D. 2d 596. See Lugo v. Kullman 68 F. Supp at 374. The acts and omission committed in this case by Trial Counsel, are so substantial and seriously deficient that they caused vast prejudice and deprived defendant of a fair trial and the well settled standard of both the State and Federal Constitution, which guarantee such representation. (See Roe-Flores v Ortega, 120 S.Ct 1029 (2000); Strickland v Washington 466 U.S. at 688.

DEFENSE COUNSEL ACTS AND OMISSION
WHILE    REPRESENTING    DEFENDANT
SERVED   TO   DENIED   DEFENDANT   OF
HIS     CONSTITUTIONAL     RIGHT     TO
EFFECTIVE ASSISTANCE OF COUNSEL,
DUE PROCESS OF LAW AND A FAIR
TRIAL. U.S. Const. Amend. 6 &
14; N.Y. Const. Art. 1, § 6.

## DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT TRIAL IN NOT CALLING PROSECUTION WITNESS WHO REVERSED HIS STATEMENT AND IDENTIFICATION TO POLICE OF DEFENDANT.

6. A defendant's constitutional right to effective assistance of counsel is satisfied when, under the totality of the circumstances existing at the time of representation, counsel provided the defendant with meaningful representation (see People v. Rivera 71 N.Y.2d 705; People v. Satterfield, 66 N.Y.2d 796; People v. Baldi 54 N.Y.2d 137). To establish that counsel was ineffective, it must be shown that the attorney's conduct was so prejudicial as to deprive the defendant of a fair trial (see People v. Benevento, 91 N.Y. 2d 708; People v. Hobot, 84 N.Y.2d 1022). "As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance" (People v. Benevento, supra; see also, People v. Lane, 60 N.Y.2d 748.

7. Defendant was arrested in connection with the death of Wendell Rosiclair, who was shot during an April 4, 1999 Night-time Brooklyn robbery. The People claimed that the robbers spotted a group of friends at a club, followed them home, and robbed

them when they disembarked from their cars. Defendant's arrest was based on a confidential source informer who stated that defendant was at a club, and he saw defendant leave with the convoy that the people claimed to rob the complainant. This confidential source told this information to Lieutenant **VINCENT DIDONATO** at the 67th Prescient. Lt. Didanto testified to this at hearing. (HEARING TRANSCRIPT: p.g. 87; Herein after "HT" refer as Hearing Transcripts). This confidential source even picked appellant out of a computer of 1037 photos. (See H.T. p.g. 92). This photo was used in a initial photo array, that a sole identifying witness (Ms. **REBECCA EORIA**) of the robbery picked appellant photo as "he looks like the guy," (See H.T. p.g. 93). During the hearing, defense attorney objected to the reliability of the informer, claiming the stringent standards; because the information provided probable cause, (See H.T. p.g. 88).

8. Nearing the end of the People's direct case during trial, this confidential source was made known in court to the defense. Before the District attorney could call this witness to testify, the District Attorney asked for a recess to speak to this witness. Upon returning from speaking with this witness, the People informed the court of the following:

> MR. FARKAS [prosecutor]: Judge I am going to rest.
>
> THE COURT: You're going to rest?
>
> MR. FARKAS: Yes.
>
> THE COURT: Mr. Spiegel, are you prepared to proceed with your witness after Mr. Farkas?
>
> MR. SPIEGEL [Defense Attorney]: May we approach the bench?

THE COURT: Yes.
Off the record.

(Whereupon, a discussion was held off the record.)

THE COURT: All right, have the jury go back to
the jury room, please.

Let's go on the record; you approached the bench
and indicated that, perhaps, the reason why you
are resting after indicating that you would call
Mr. Johnson is that Mr. Johnson said something
to exculpate the Defendant.

Mr. Johnson is still here, so even if he's not
still here, I guess you have to disclose that.

MR. FARKAS: Judge, his memory does not assist
my case.

THE COURT: All right, it doesn't exculpate him;
is that what you are saying?

MR. FARKAS: Judge, I'll put on the record, I
have nothing to hide, he say [**meaning the
confidential source: Mr. Johnson**], he doesn't
remember Shiloh being at the club. He disputes
the DD-5's as being incorrect.

THE COURT: So he was at the club that night?

MR. FARKAS: Yes.

THE COURT: Mr. Spiegel, I guess he's available
to be called as a witness at this moment.

MR. SPIEGEL: **I don't wish to call him.**

THE COURT: Okay.

MR. FARKAS: May I allow him to leave?

THE COURT: We're going to have him leave at this
point if no one has an objection, yes....
(Trial Transcript: p.g. 1155-1156)

Defendant's trial counsel was ineffective for failing to call

this witness to testify. Mr. Johnson was the first person that

put defendant's name and photo to the investigating police, as

one of the men belonging to the crew of men that robbed and killed

the victim. This information was relied upon heavily by the police to further investigate and subsequently arrest the defendant. At the Hearing the Court relied heavily upon the confidential source information testified about by Lieutenant DiDonato, to sustain defense counsel objection to the reliability of the information and grounds of probable cause to arrest. At trial when it became apparent to the People, the Court and defense counsel that the confidential source information is questionable; the people fulfilled their duty by disclosing the unreliable information. The court inturn offered defense counsel the opportunity to call this witness. Defense counsel declined the opportunity to even talk to the people's confidential source, that provided probable cause to arrest his client; after this confidential informant reversed his information to the police.

9. It is well settled that it is not enough for someone with a law degree to stand by an accused side; more is required of counsel. Counsel's function is to <u>challenge</u> the People's case against his or her client. <u>**Strickland v Washington**</u>, 466 U.S. 668 (1984); <u>**People v Baldi**</u>, 54 NY2d 137 (1981). While a court should not second-guess whether a course chosen by the defendant's trial counsel was the best strategy, or even a good one (<u>see</u> <u>**People v Ghee**</u>, 153 A.D.2d 954), it is hard to perceive any trial strategy which would justify counsel's failure to interview of and/or call the People's confidential source witness who's disclosure before testifying for the people, is contrary to the information provided to the police, it's exculpatory and it exonerate's the defendant, and substantiated his defense (<u>see</u>

People v. Rojas, 213 A.D.2d 56; People v. Baba-Ali 179 A.D.2d 725; People v. Daley, 172 A.D.2d 619. When the representation afforded the defendant is viewed in its totality, and as of the time of the representation, together with the evidence, the law, and the circumstances presented, it is apparent that the defendant was not afforded meaningful representation of counsel.

10. In the present case, a confidential source materialized at a station house and informed a Police Lieutenant that five names he know from the street was involved in a Robbery/Murder. This information became the life source for the People's case. The arrest, and lineup was based upon this confidential source information. The subsequent identification of defendant by Ms. Etoria (a sole eye witness to the crime), stemed from this confidential source information. During the hearing, the court relied upon this confidential source information, relayed by a Police Lieutenant, to sustain defendant's arrest. At the end of the People's case, this confidential source become known to defense counsel and the court, but with a possible exculpatory story all contrary to what the Police and the People relied upon to build their case. When the court offered defense counsel to call this witness, so he may confirm or deny the information that the entire case initiated upon, defense counsel unexplainable and flatly refused to interview and or call this witness. When Mr. Johnson, the People's confidential source witness informed them before taking the witness stand, that:

> "... he doesen't remember Shiloh being at the club...[and]...he disputes the DD-5's [that Lieutenant DiDonato's testimony based upon at the hearing], as being incorrect..." (Trial

it appear's that the defendant was not afforded meaningful representation of counsel (see, People v. Baba-Ali, supra; People v. Daley, supra. This information tended to exonerate the defendant and substantiate his defense of an Alibi. When the informant said "...he dispute the [information in] the DD-5's as being true"; he is in essence talking about the information that Lt. Didonato testified to at the hearing

    11. Defense counsel could have called Mr. Johnson to the witness stand to confirm or deny that the information given to the Lieutenant DiDonato, placing Defendant at the club where the incident that lead to robbery and murder began, was all made up, as he made clear to the A.D.A., who interviewed him before he was to testify at trial. Defendant's counsel could have called Mr. Johnson to cast doubt on Lieutenant DiDonato's testimony that he gave at the hearing confirming the reliability of the confidential source information. Defense counsel could have called Mr. Johnson to cast doubt on the people's only identifying witness, who at first identified defendant as "He looks like the guy". Ms. Etoria, is the only person who identified defendant; she may have had a motive to lie and or make believe that defendant "is the guy" and not "he look's like the guy". This witness is the girlfriend of the deceased.

    12. With all the doubt that this witness could have caused upon the people's case, going back to the, photo array that the sole identifying witness viewed; the arrest and subsequent evidence the people presented; it is hard to perceive any trial strategy which would justify counsel's failure to

interview or call said witness to testify. Within the meaning
of Strickland, when the fact of a case supply him [defense
counsel] with "notice" that a witness testimony will benefit
his client, and he does not pursue it, that attorney action is
not reasonable. Holladay v. Haley, 209 F3d 1242. There was
potential evidence to show that Defendant did not committ the
Robbery and murder, confirming by the confidential source who
put defendant with the click that commited the crime. Bell v.
Georgia, 554 F.2d 1360 (5th. Cir. 1977). An attorney who fails
to even interview a readily available witness whose noncumulative
testimony may potentially aid the defense, should not
automatically defend his omission simply by raising the shield
of "trial strategy and tactics." Peopl v. Droz, 39 NY2d 457
(1976).

13. There was nothing in the confidential informer's
statement to the prosecuting attorney (which was made clear to
the court), that "defendant was not at the scene...and what the
Lieutenant DiDonato testified too on the DD-5's... as incorrect";
could have caused trial counsel to at least forgo interviewing
this witness. This witness was made available to defense counsel
by the court, when the People decided not to call him. Counsel
conduct was unreasonable and quite unprofessional, given the
circumstances of the instant case. The Prosecution's case was
not a walk in the park; the prosecution relied upon an identifying
witness testimony and identification that stemmed from a
confidential informer. And to solidify their case, from the arrest
to the end of trial, this confidential source information was

being relied upon heavily by the People. Therefore with this knowledge, coupled with the information this informer rendered at the end of trial, counsel knew or reasonably should have knew that calling this witness to testify would cause grave doubt to the people case. Counsel's action was not reasonable, it "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).

14. Therefore when counsel failed to present the above testimony of the prosecution's informer (which was provided to defense counsel in court by the prosecutor and the court), and rebuted the People's evidence, which could have created exculpatory evidence and forming reasonable doubt in the jury'y mind, counsel's representation was not meaningful. People v Baldi, 54 NY2d 137 (1981). Hence deprived defendant of a fair trial. People v. Bennett, 29 NY2d 462; Thomas v. Kuhlman, 255 F.supp. 2d 99 (EDNY 2003).

WHEREFORE, defendant request that an Order be entered vacating the defendant's judgment of conviction pursuant to CPL §440.10 (1)(h), or in the alternative, that a hearing be held to determine whether such judgment should be vacated for the reasons set forth above, and for such other and further relief as this Court may seem just and proper.

Shiloh Hylton. Pro/Se
Green    Haven    Corr.
P.O. Box 4000
Stormville NY 12582

Sworn to before me this
26th day of May 2005.

NOTARY PUBLIC

PAUL J BRAUN
Notary Public State of New York
Qualified in Dutchess County
Commission # 01BR6070938
Commission Expires Dec 23, 2006

EXHIBIT 3 (B)

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                       ) ss:
COUNTY OF DUTCHESS )

      I, __SHILOH HYLTON(00-A-5048)__ , being duly sworn, deposes and says:

      I am the within mentioned defendant/petitioner and have served a copy of the following papers:

    __APPLICATION TO APPEAL TO AN INTERMEDIATE APPELLATE__

    __COURT PURSUANT TO CPL. §460.15 / W copies of §440.10__

    __MOTION.__

upon the below listed parties:

                        __CLERK OF THE COURT: App.Div.(2d Dept)__

                        __DISTRICT ATTORNEY: KING COUNTY__

by placing the above in a post-paid envelope and depositing it in a United States Postal Mailbox located within Green Haven Correctional Facility, Stormville, New York 12582 on the __10__ day of __November__ , 200__5__ , as due and sufficient services.

                      _Shiloh Hylton_

Sworn to before me this
__10ᵗʰ__ day of __November__ , 200__5__.

                  _Paul J Braun_

NOTARY PUBLIC
PAUL J BRAUN
NOTARY PUBLIC NEW YORK ST.
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5070658
EXP, DEC.23,2006

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

Respondents,

-AGAINST-

SHILOH   HYLTON,

Defendant.

APPLICATION   FOR   LEAVE   TO   APPEAL
C.P.L.  §§450.15;   §460.15

SUBMITTED   BY:

SHILOH HYLTON(00-A-5948)
PRO SE
GREEN HAVEN CORRECTIONAL FACILITY
P.O. BOX 4000
STORMVILLE, NEW YORK 12582-0010

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT      X

THE PEOPLE OF THE STATE OF NEW YORK,

                          Respondents,

            -against-

SHILOH  HYLTON,

                  Defendant.
----------------------------------------X

**NOTICE OF APPLICATION TO
JUSTICE OF THE APPELLATE
DIVISION FOR CERTIFICATE
GRANTING LEAVE TO APPEAL
PURSUANT TO CPL. §460.15**

**Kings County Indictment No.
#3354/99**

SIR:

PLEASE TAKE NOTICE, that the above name defendant-appellant
will make an application before the presiding justice of the
Supreme Court, Appellate division: Second Department, located at
45 Monroe Place, Brooklyn, New York, on the _____ day of _____,
at 9:30 in the forenoon of that day for a certificate pursuant to
to Section 460.15 of the Criminal Procedure Law of the State of
New York granting permission to appeal and certifying that
the above entitled cause involves questions of Law and Facts
which ought to be reviewed by the Appellate Division: Second
Department, and allowing an appeal to the said Court from
the order of the Supreme Court, County of Kings, entered on the
14th day of October, 2005, denying a motion by the defendant
made pursuant to Section 0.10 of the Criminal Procedure Law, to
vacate judgment and from each and every part of said order.

Dated: _____, 2005
       Stormville, N.Y.

                             Yours, etc.

                             Shiloh Hylton(00-A-5948)
                             Defendant/Appellant Pro Se
                             Green haven Correctional Facility
                             Stormville, N.Y. 12582

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT    X

THE PEOPLE OF THE STATE OF NEW YORK,

                      Respondents,

      -against-

SHILOH  HYLTON,

                Defendant.
----------------------------------------X

|  |
|---|
| **AFFIDAVIT IN SUPPORT OF APPLICATION TO JUSTICE OF THE APPELLATE DIVISION FOR CERTIFICATE GRANTING LEAVE TO APPEAL PURSUANT TO CPL. §460.15** |
| **Kings County Indictment No. #3354/99** |

STATE OF NEW YORK   )
                 )ss.:
COUNTY OF DUTCHESS )

    I,  SHILOH  HYLTON,  being duly sworn deposes and says:

    1.    I am the  defendant/appellant in the above entitled caption and as an layman in matters of law, make  this  affidavit Pro Se.

    2.    I am familiar with all the facts and circumstances herein

    3.    This affidavit is submitted in  support of an application pursuant to Criminal Procedure Law §460.15 and §671.[e]  of  this Court's rules for a certificate granting permission to appeal to this Court from an order of the  Supreme Court Kings County, Hon. Joel Goldberg,  dated  October 14, 2005, denying  defendant's  motion.

    4.    This application is  brought on by  an order to show  cause because  under  the provision of  C.P.L. §460.50 subd. 1,  bail pending appeal  is not  statutorily  authorized  since defendant is presently  incarcerated and serving  his  prison sentence the delay occasioned by ordinary motion practice would be extremely prejudicial. In the event that a certificate were to be ordered pursuant to CPL. §460.15 defendant will move this Court for an  order  allowing   an expedited appeal.

5.   In accordance with the requirements of §671.5   of   this Court's rule,  the following  information  is  supplied:

(A)   The appellant is SHILOH HYLTON (00-A-5948),  Green Haven Correctional Facility, P.O. Box 4000,  Stormville, New York 12582. The  People is represented by  Solomon Neubort,  Assistant District Attorney of  Kings County.  The  indictment number is  3354/99.

(B)   The  questions of Law and Facts which should  be reviewed are  thus:

(I)   Whether the trial Court improperly denied defendant's  motion pursuant to CPL. §440.10 to vacate a judgment,  where the evidence,  law  and  facts dehors the trial record  and were otherwise incomplete to develop and support defendant's  claim of ineffective assistance of counsel on direct appeal.  And,

Whether the trial Court  improperly ruled that defendant's claims are procedurally barred by CPL. §440.10[2][c]  stating that adequate facts appeared on the record for the defendant to have raised the claims on direct appeal.

(II)   Whether  the  defendant  had  properly raised  a claim of ineffective assistance of trial counsel under CPL. §440.10 [1][h]. Where the judgment was  obtained  in  violation of defendant's rights  under the  State and Federal Constitution of this State or of the United States.  Where  trial  counsel failed to call a prospective prosecution witness who recanted, and did not move to reopen the suppression hearing.

-2-

(III)   Whether the trial Court improperly ruled that Ricardo Johnson's affidavit, even assuming he was the confidential informant in this case, would not be sufficient "Newly Discovered Evidence" pursuant to CPL. 440.10[1][G] to create a probability of a more favorable verdict to the defendant, and further stated that the discovery of the affidavit of Ricardo Johnson, even if he was the confidential informant in the case, was not sufficient grounds to excuse the failure to raise the ineffective assistant claim on appeal.

(IV)   Whether the trial Court improperly denied defendant's CPL. §440.10 motion without a hearing.

(V)   The above are the defendant's information, second belief, and questions of Law which ought to be reviewed by this Court.   No prior application for such certificate has been made.

(VI)   Annexed hereto are the following documents:

     A.   Defendant's motion to vacate judgement.

     B.   Defendant's reply to and rebuttal to respondent's affirmation in opposition to defendant's motion to vacate judgment.

     C.   Trial Court's decision and order denying defendant's motion.

-3-

## PROCEDURAL HISTORY

The defendant was indicted in June 11th, 1999 by a Kings County Grand Jury on 2 counts of Murder in the Second Degree. In violation of Penal Law §125.25[3]; 3 counts of Robbery in the First Degree. In violation of Penal Law §160.15; 1 count of Robbery in the Second Degree. In violation of Penal Law §160.10. Criminal Possession of a Weapon in the Third Degree. In violation of Penal Law §265.02; Criminal Possession of a Weapon in the second Degree. In violation of Penal Law §265.03.

defendant was arraigned and entered a not guilty plea. Trial was held in the instant matter and defendant was found guilty on October 17, 2000. Defendant was sentenced to an indeterminate prison term of 20 years to life. A timely Notice of Appeal was filed and on March 2, 2001 the Appellate Division: Second Department granted leave to appeal as a poor person on the original papers and typed written brief and assigned Lynn W.L. FAhey to represent defendant on appeal.

On or about the 27th day of January, 2003, a type written brief including a pro se supplemental brief was filed in this Court. The defendant's conviction was affirmed on the 1st day December, 2003. People v. Hylton, 2 A.D.2d 259. On the 16th day of March, 2004 New York Court of Appeals had denied appellant's leave application. People v. Hylton, 2 N.Y.2d 741 (2004) Ciparick, J.).

On the 18th day of May, 2005, appellant had filed a §440,10 motion before the Supreme Court, Kings County, to vacate his October 17th, 2000 judgment of conviction for Murder in the Second Degree.

-4-

## TRIAL COURT'S DECISION AND ORDER

Trial Court's determination is solely premised on its opinion that defendant could have raised his claims presented in the §440.10 motion on direct appeal, and thus, should be "procedurally barred." The trial Court further states that the defendant's claims are "without legal merit." Based on that finding, the trial Court denied defendant's motion without the benefit of a hearing. (see Trial Court's decision and order dated October 14, 2005).

### THE TRIAL COURT HAD OVERLOOKED THE FACT THAT A C.P.L. §440.10 IS THE PROPER VEHICLE TO RAISE INEFFECTIVE ASSISTANCE OF COUNSEL.

To establish a defendant was denied effective assistance of counsel, such violation is normally asserted in the context of a motion pursuant to Criminal Procedure Law, section 440.10. A motion to vacate the judgment is the proper procedure to address said claim (People v. Blaylock, 697 N.Y.S.2d 522; People v. Roberts, 89 A.D.2d 912; People v. Clark, 254 A.D.2d 299 (2d Dept.); People v. Gerner, 99 A.D.2d 596. See also People v. Rivera, 71 N.Y.2d 705 (Ct. App. 1988). The Court of Appeals admonished that it would have been appropriate for the defendant to have raised his ineffective assistance of counsel claim by §440.10 motion.

-5-

Thus, this Court is asked to decide claims of ineffective assistance of counsel by resorting to supposition and conjecture rather than a thorough evaluation of each claim based on a complete record (C.P.L. §440.10 quoting Rivera at 55).

In the case at bar, trial Court denied defendant's ineffective assistance claim without the benefit of a hearing by the "supposition" that the claims could have been deducted pro-se the trial record.

An expansion of the record was a necessity to adequately review defendant's ineffective assistance claim, an expansion of the record can be made by way of C.P.L. §440.10 motion (see People v. Rivera, (supra) at 705, 709).

The purpose of a hearing is to afford a litigant an opportunity to establish the facts alleged in his pleading or other papers with facts, if proven would be a proper predicate for the relief sought (C.P.L. §440.30 subd. 5).

In the People's opposition to defendant's CPL. §440.10 motion, the People assumes that the prosecution's witnesses testimony would not have been useful to the defense.
Such speculative assertion can only be proven if the confidential informant was given the opportunity to take the stand and testify. At this point and time, a hearing, at minimum, is necessary. Furthermore, as defendant asserts in his motion, "there   is nothing in the confidential informant's statement   to   the prosecuting   attorney   that would   cause   an   competent   defense

<u>attorney</u> <u>to</u> <u>forego</u> <u>a</u> <u>vital</u> <u>opportunity</u> <u>to</u> <u>interview</u> <u>this</u> <u>witness</u>."
Where the statement made by the confidential informant   to the
District Attorney  made it  clear to the Court that  this defendant
was  not  at  the  scene,  demonstrating  that   the testimony  of
lieutenant Didonado  in  relation to the  DD-5's  were,  indeed,
incorrect. (<u>see:</u>  Motion p.12 & 13).

When the People chose not to call this witness, the Court made
this  witness  available  to  defense counsel  who  chose  not  to
interview  this  witness.  Such decision  has rendered  counsel's
assistance  ineffective  and  unreasonable.  Where  a  competent
defense  attorney,  given  the  circumstances in the case,   would
have  interviewed  witness  and persuade this witness to allow  the
jury to hear the statement he made to the  prosecutor exonerating
his client.

Counsel's  decision not to interview witness was substantially
prejudicial to his client's defense.  Where  counsel  should   have
called  Mr. Johnson to the  witness stand to either confirm or deny
the information he had related to Lt. Didonato.  That  placed  the
defendant  at a  club which eventually lead to a robbery and murder,
was  all  a fabrication and was made  clear  to  the   prosecuting
District Attorney  prior to him  being  called to testify.

It is apparent that this defendant  was  not  afforded  meaningful
representation (see <u>People v. Baba</u>, 179 A.D.2d 725; <u>People v. Daley</u>,
172 A.D.2d 619),  where such evidence exonerate the defendant. (<u>see</u>
Motion p.11).

-7-

## PREJUDICE TO DEFENDANT

Although this defendant has demonstrated that he suffered actual prejudice as a result of his counselor's deficiencies; which is a prerequisite to a finding of ineffective assistance of counsel (**People v. Frascatore**, 200 A.D.2d 860, 861). This Court should also determine that the trial Court's decision was erroneous as well as prejudicial to the defendant. Where in the trial Court's decision & Order states:

For the [r]easons stated in the [P]eople's response, the defendant's motion is denied. the claims are procedurally barred by CPL. §440.10[2][c], because adequate facts appears on the record for the defendant to have raise these claims on direct appeal, The discovery of Ricardo Johnson's affidavir, assuming Ricardo Johnson is the confidential informant in the case, is not sufficient ground to excuse the failure to raise the ineffective assistance claim on appeal. (**see**: Decision & Order p. 6).

Trial Court's determination of a procedurally bar of defendant's §440. motion is errneous and unreasonable. Where, in light of the [f]acts presente[d], this Court has consistently held that an ineffective assistance claims that involve matters which dehors the record are not properly presented on direct appeal. (**People v. Boyd**, 244 A.D.2d 497 (2d Dept. 1997); **People v. Southard**, 551 N.Y.S.2d 70 (2d Dept.1990); **People v. Walker**, 543 N.Y.S.2d 171 (2d Dept. 1989); **People v. Bosley**, 540 N.Y.S.2d 723 N.Y.S.2d (2d Dept.1989); **People v. Banks**, 498 N.Y.S.2d 72

-8-

In response to the above dilemma, a proposal was submitted by the People, represented in Senate and Assembly. Which proposed an Act to amend the Criminal Procedure Law, in relation to claims of ineffective assistance of counsel in post-conviction motion. Permitting All Ineffective Assistance of Counsel Claims to be Raised on Collateral Review (CPL. §440.10[2]).

the Committee recommends that paragraph (b) and (c) of sub-division two of section 440.10 of the Criminal Procedure Law be amended to provide that ineffective assistance of counsel claims shall be exempt from the procedurally bars to collateral review imposed by these two statute. (se: A-190-191 [enclosed]).

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section 1. Paragraph (b) and (c) of subdivision 2 of the section 44.10 of the Criminal Procedure Law are amended to read as follows:

(b)   The judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issues raised upon the motion to permit adequate review thereof upon such an appeal **unless the issue raised upon such motion is ineffective assistance of counsel**; or

(c)   Although sufficient facts appear on the record of the proceeding underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue upon the motion, no such appellate review or determination occurred owing to the defendant's injustifiable failure to take or perfect an appeal during the prescribed period or to his or her unjustifiable failure to raise such ground or issue upon appeal actually perfected by him or her **unless the issue raised** -9- **upon such motion is ineffective assistance of counsel**.

In the case at bar,  trial Court further asserts that:

Ricardo Johnson's recantation of his trial testimony  in  the
unrelated murder case occurred  after the trial in this case,   and
trial counsel here cannot be faulted for not making use of facts that
did not exist at the time he decided not to interview or call the
confidential informant in this case.   Just as Ricardo Johnson's
affidavit, assuming he is the confidential informant in the case,
would not be sufficient   "Newly Discovered Evidence" pursuant to
CPL. §440.10(1)(g)  to create a probability of  a  more  favorable
verdict to the defendant,  neither is it sufficient to mitigate the
failure to raise on appeal the ineffective assistance claim now being
made.  (see:  Decision & Order p. 6).

Contrary to the trial Court's assertion,  the fact still remain,
the defendant's arrest was  based  on  a confidential informant's
information which states that  defendant was at  a club, and he
saw defendant leave with a convoy that the People claimed to have
robbed the  complainant.  This information was related to Lieutentant
Didonato by this informant. (Hearing Transcripts: 87).  This
informant  had  also  picked  the  defendant  out of a computer of 1037
photos.  This photograph was  used in a initial photo array presented
to  a  sole identifying witness,  Ms. Rebecca Eoria, who stated that
the defendant looked like one of the  perpetrator. (see: Hr. Min.:
88).  Although at the hearing,  defense counsel had object to the
reliability of the  informant,  claiming the stringent standard;
because  the  information provided probable cause,  the jurors, who
are the trier of the facts, should be informed of an informant's
propensity  of recanting his testimony.  While a recantation must
be looked upon with the utmost suspension and establish  whether

the testimony given [or statement] at trial [or at the precinct]
was, in fact, truthful (Sanders v. Sullivan, 863 F.2d 218, 225
(2d Cir. 1988).

It is the defendant's contentions that trial counsel was
ineffective when he refused to call the recanting witness, denying
the jury the opportunity to weigh the evidence for possible perjury
and the fact that this witness has a propensity of fabricating events.

Therefore, due to counsel deficient performance, defendant
was denied his Sixth Amendment right to a fair trial. (see:
Amended §440. motion). After the Court had offered defense counsel
an opportunity to call this witness, counsel's decision was not
in the best interest of his client. Where due to this informant's
information, the defendant was wrongfully convicted of a crime he
did not commit. For counselor to disregard an opportunity to re-
open the Dunaway hearing to offer the People to demonstrate
probable cause for his client arrest absent of the informant's
information, has rendered counsel's assistance ineffective,
(Strickland v.Washington, 466 U.S. 688); People v. Baldi, 54 N.Y.2d
137). There is not legitimate explanation for counsel's shortcoming
(People v. Eagleton, 161 A.D.2d 482 (1st Dept.1990); People v. Berroa,
99 N.Y.2d 134 (Ct. App. 2000). Counsel's performance fell below the
the legal objective standard for reasonable representation and such
deficiency prejudiced the defendant defense, (Strickland v. washington,
(supra); U.S. v. Cronic, 104 S.Ct. 2039 (1984); USCA. Const. VI,
XIV; N.Y. Const. Art. I, § 6).

-11-

Due Process Clause and the Sixth Amendment right to a jury trial requires a criminal conviction to rest upon a jury's determination that the defendant is guilty of every element of the crime which he is charged beyond a reasonable doubt (Cupp v. Naughten, 414 U.S. 11; In Re Winship, 397 U.S. 358). Trial counsel Frederick Spiegal conduct was substantially prejudice to the defendant's rights under federal and State Constitution by failing to Ricardo Johnson to testify. Where the foundation of the People's case rest entirely upon this informant's information given to Lt. Didonato to establish probable cause to arrest this defendant. Nevertheless, the defendant contends that he was convicted in state court in violation of the Sixth Amendment to the United States Constitution, which vests persons charged with crimes with the right to the "Assistance of Counsel encompasses the right to [e]ffective Assistance of Counsel," see McMann v. Richardson, 397 U.S 759). Such applies to the states as a component of the right to "due process of law" secured by the Fourteenth Amendment to the United States Constitution, see Evitts v. Lucey, 469 U.S. 387).

Although the Constitution does not oblige counsel to present each and every witness that is suggested to him, (United States v. Balzano, 916 F.2d 1273 (7th Cir. 1990), But in light of the testimony that of this particular witness would have to offer -- and in light of the fact that defense counsel knew that this testimony would exonerate his client, defense counsel's decision not to call Mr. Johnson must be considered an [e]rror of [e]xtraordinary [m]agnitude. (see Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001). There is nothing

-12-

in the record that there was any reason not to put Mr. Johnson on the stand, and "an attorney's failure to present available exculpatory evidence is ordinarily deficient (Hart v. Gomez, 174 F.3d 1067). (holding that counsel provided constitutionally ineffective assistance where, inter alia, "[h]aving chosen to pursue [a particular] line of defense," counsel did not introduce readily available evidence that would have corroborated that line of defense, and there was no plausible strategic reason for counsel not introducing evidence).

### ADEQUATE FACTS WERE [N]OT ON THE RECORD THAT COULD HAVE BEEN RIASED ON APPEAL. CPL. §440.10 WAS NECESSARY TO ESTABLISH THE FACTUAL PREDICATE FOR THE CLAIM.

Trial Court erred when it stated that sufficient facts appear on the record for defendant to raise claim on direct appeal. Where the proper vehicle to raise the contention is by a motion pursuant to section 440.10 of the Criminal Procedure Law. Where particular points and facts were not properly preserved for Appellate Court review.

Confidential informant had informed the prosecuting attorney and the Court that defendant was not at the scene was not preserved for Appellate Court's review due to counsel's deficiency. (see: Motion p. 12 & 13). (CPL. §470.05).

The defendant in the instant matter, does not believe that the circumstances and the facts of his claim are so far removed from this Court's prior determination that "ineffective assistance which involve matters which dehors the record should be raised on a 440.10 motion", that he should receive a contrary ruling.

-13-

Nevertheless,  the Court of Appeals held in **People v. Brown**, 45 N.Y.2d 854,  in typical cases  it would be better  and in some cases essential,  that  an  appellant attack on the effectiveness of counsel be bottomed on  an  evidentiary  exploration  by  collateral or post conviction proceeding brought under  CPL. §440.10 (**see**:  **People v. Brown**, 28 N.Y.2d 282).

Moreover,  prior ruling by this Court have confirmed the necessity of a hearing and that defendant was not procedurally barred by raising his claims by §440.10 motion (**People v. Delarose**, 288 A.D.2d 729 (2d Dept. 2001);  **People v. Mendoza**, 298 A.D.2d 532 (2d Dept. 2002); **People v. Jones**,  55 N.Y.2d 771 (Ct. App. 1981)(Reviewing the record without the benefit of knowing as might have been developed had an appropriate after judgment motion been made, what was in defense counsel's mind;  We cannot conclude that defense counsel was ineffective). and  **People v. Brown**, 45 N.Y.2d 852 (supra).

WHEREFORE, defendant prays that for the foregoing reasons it is respectfully submitted that defendant's application for certificate granting leave to appeal be granted in all respect.

Dated: November, 2005
      Stormville, N.Y.

Respectfully Submitted,

Shiloh Hylton(00-A-5948)
Pro Se
GREEN HAVEN CORECTIONAL FACILITY
P.O. BOX 4000
STORMVILLE, NEW YORK 12582

Sworn to before me this
10th day of November, 2005

NOTARY PUBLIC
PAUL  J BRAUN
NOTARY PUBLIC NEW YORK ST.
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5070658
EXP, DEC. 23, 2006

-14-

EXHIBIT 4(A)

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
——————————————————————————— X

The People of the State of New York,      :

                         Respondent,      :


          -against-                       :


SHiloh Hylton                             :

              Defendant-Appellant.        :

——————————————————————————— X



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NOTICE OF MOTION FOR A PETITION FOR A WRIT OF
ERROR CORAM NOBIS WITH SUPPORTING AFFADIVIT



Kings County Indictment Number 3354/99



                              DEFENDANT
                              PRO SE
                              Green Haven Corr.
                              P.O. Box 4000
                              Stormville New York
                              12582-0010

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK  )
                    ) ss:
COUNTY OF DUTCHESS )

      I, _Shiloh Hylton_____, being duly sworn,

deposes and says:

      I am the within mentioned defendant / ~~petitioner~~ and have served a copy of the following
papers:

NOTICE OF MOTION FOR A PETITION FOR A
WRIT OF ERROR CORAM NOBIS; AFFIDAVIT IN
SUPPORT OF MOTION FOR WRIT OF ERROR CORAM
NOBIS

Upon the below listed parties:

DISTRICT ATTORNEY
KINGS COUNTY
350 JAY STREET
BROOKLYN NY 11201

by placing the above in a post-paid envelope and depositing it in a United States Postal Mailbox
located

within Green Haven Correctional Facility, Stormville, New York 12582 on the ___6___ day of
APRIL.

200 6, as due and sufficient services.

_Shiloh Hylton_

Sworn to before me this

6th day of April, 2006.

_____
NOTARY PUBLIC

PAUL J BRAUN
NOTARY PUBLIC NEW YORK ST
QUALIFIED - DUTCHESS CTY.
COMMISS #01BR50706...

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISIION: SECOND DEPARTMENT
——————————————————————————— X

The People of the State of New York,
                    Respondent,         NOTICE OF MOTION FOR
                                        A PETITION FOR A
                                        WRIT OF ERROR
      -against-                         CORAM NOBIS

Shiloh Hylton,
               Defendant-Despondent.    Kings County Indictment
                                            Number 3354/99
——————————————————————————— X

**TO THE APPELLATE DIVISION: SECOND DEPARTMENT**

PLEASE TAKE NOTICE, that upon the annex motion of <u>Shiloh</u> <u>Hylton</u>, being duly sworn on the _6th_ day of _APRIL_ , 2006, all exhibits attached and all proceedings had herein, a motion will be made in the Supreme Court of the State of New York, APpellate Division, Second Department, at a term thereof, located at 45 Monroe PL., Brooklyn 11201, on ___ day of _____ 2006, at 10 O'clock in the forenoon, or as soon thereafter as appellate can be heard for an Order Vacating the judgment rendered on 2 of May, 2002.

Appellant being confined at Green Haven COrrectional Facility, respectfully requests that any answering papers and exhibits filed in opposition to the herein motion be made returnable to appellant; and

such other and further relief as this court may deem just and equtable.

Dated: 6 APRIL 2006
       Stormville, New York


                                    Respectfully Submitted

                                    _Shiloh Heyten_
                                    Defendant-Appellant
                                    Pro Se



TO: Clerk of the Court:
James E. Pelzer
Appellate Division 2nd Dept.
45 Monroe PL.,
 Brooklyn 11201


TO: Hon. Charles J. Hynes
District Attorney of kings County
Renaissance Plaza
350 Jay Street
Brooklyn 11201-2908

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
————————————————————————————X
The People of the State of New York,    :

                    Respondent,         :

      -against-                              :

SHiloh Hylton,                          :

           Defendant-Appellant. :
————————————————————————————X


## PRELIMINARY STATEMENT

This motion is being submitted on behalf of the judgment rendered on May 2, 2002, affirming appellant conviction rendered in the Supreme Court of the State of New York, County of Kings, Convicting Appellant, after a jury trial of Murder in the Second Degree (P.L. § 125.25[3]), and sentencing him to an interminate term of twenty years to life. (FIRETOG, J., at pretrial WADE hearing; GOLDBERG, at trial and sentence).

The judgment being challenged of People v. Hylton 2 A.D.3d 459 (2003), which affirmed Defendant-Appellant's conviction.

Appellant is currently incercated pursuant to the judgment, and no application for a stay has been made.

## QUESTION PRESENTED

1. Whether appellant counsel was ineffective for failing to raise a meritorious argument of ineffective assistance of trial counsel failed to call the District Attorney confidential source witness to the stand, after said witness recanted at the close of the People's direct case, stating: that his statement to police and identification of defendant was incorrect.

SUPREME COURT OF THE STATE OF NEW YOUR
APPELLATE DIVISION: SECOND DEPARTMENT
——————————————————————————X

The People of the State of New York,

                 Respondent,     AFFIDAVIT IN SUPPORT
                                 OF MOTION FOR A WRIT
                                 OF ERROR CORAM NOBIS

     -against-

Shiloh Hylton,
            Defendant-Appellant.
——————————————————————————X

State of New York )
              ) ss.:
County of Dutches )

Shiloh Hylton being duly sworn, depose and says:

    1. I am the above-name appellant-defendant in this action,
and make this affidavit in support of a petition for a writ
of Error Coram Nobis upon the following grounds:

    (a) Appellant was denied of his right to effective assis-
tance of counsel on an appeal as of right in violation of his
State and Federal Constitutional rights; and

    (b) Appellant counsel unjustifiable failed to raise a merit-
orious issue on appeal, and if raised, would have resulted in
a reversal of the judgment; and

    2. Appellant will demonstrate he is entitled to a de novo
appeal from the judgment rendered.

3. On Appeal, Counsel rised four issues, none of which
would have given appellant a reversal or modification of the
judgment rendered in the Supreme Court Court of the State of
New York, County of Kings. The issues raised by Appellate Counsel
are as follow: (a) the evidence was legally insufficient to
support the judgment of conviction; (b) the court, after a pre-
trial hearing, improperly determined that the lineup procedure
in which Robecca Etoria, an eye-witness, identified defendant,
was not unduly suggestive; (c) the trial court improperly perclud-
ed the defense from eliciting hearsay evidence that defendant
mother told the police that her son was home on the morning
of the shooting; and (d) the trial court's charge to the jury
on identification was improper. In a _pro se_ supplemental brief,
defendant also calimed that: (a) the prosecuor's delay inturning
over _Brady_ material denied him of a fair trial; (b) he was denied
a fair trial because the court refused to permit defense counsel
to elaborate on some of his objections; (c) he was denied as
fair trial because the court chastised defense counsel in front
of the jury, and (d) the prosecutor improperly sought to impeach
the credibility of a defense witness with the witness's prior
statement.

WHEREFORE, deendant-Appellant request a _de nova_ appeal from
the judgment rendered on May 2, 2002., by this Court

affirming defendant's conviction.

Respectfully SUbmitted

_Shiloh Hylton_
Appellant Pro Se
Green Haven Corr. Fac.
P.O. Box 4000
Stormville NY 12582

Sworn to Before me this

6TH day of April · 2006

NOTARY Public.

PAUL  J BRAUN
NOTARY PUBLIC NEW YORK ST
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5070658
EXP.  DEC. 23. 2006

## POINT I

Appellate-Defendant was denied
his rights of effective assistance
of Appellate Counsel when Appellate
failed to raise ineffective assiatance
of trial counsel.

## COURT'S DECISION

This Court affirmed the conviction rendered on October 17, 2000,
in the Supreme Court of the State of New York, County of Kings.
(See, Exhibit "A").

## STATEMENT OF FACTS

As the confidential source witness for the investigating police,

Mr. Johnson was called by the prosecution to testify about the

information he provided to the police, that helped form the

basis for probable cause to arrest the defendant. As the People

last witness, when Mr. Johnson was called to take the stand,

he informed the prosecuting attorney, that he will testify that

his information to the police about appellant-defendant was

incorrect. The District Attorney than placed the following on

the record before the court and defense counsel:

MR. FARKAS [prosecutor]: Judge I am going to rest.

THE COURT: You're going to rest?

MR. FARKAS: Yes.

THE COURT: Mr. Spiegel [defense attorney], are you prepared
to proceed with your witnesses after Mr. Farkas?

MR. SPIEGEL: May we approach the bench?

THE COURT: Yes. Off the record.

(Whereupon, a discussion was held off the record.)

THE COURT: All right, have the jury go back to the jury
room please.

Lets go on the record; you approached the bench and indicate
that, perhaps, the reason why you are resting after indicat-
ing that you would call Mr. Johnson is that Mr. Johnson
said something to exculpate the Defendant.

Mr. Johnson is still here, so even if he's not still here,
I guess you have to disclose that.

MR. FARKAS: Judge, his memory does not assist my case.

THE COURT: All right, it doesn't exculpate him; is that
what you are saying?

MR. FARKAS: Judge, I'll put on the record, I have nothing
to hide, he say, he doesn't remember Shiloh being at the
club. He disputes the DD-5's as being incorrect.

THE COURT: So he was at the club that night?

Mr. FARKAS: Yes.

THE COURT: Mr. Spiegel, I guess he's available to be called
as a witness at this moment.

MR. SPIEGEL: I don't wish to call him.

THE COURT: Okay.

MR. FARKAS: May I allow him to leave?

THE COURT: We're going to have him leave at this point
if no one has an objection, yes...

(Trial Transcript: p.g. 1155-1156)

Mr. Johnson was the first witness who placed appellant-defendant

with a group of individuals who drove and trailed the desease

rob and subsequent kill the victim. Mr. Johnson provide this

information to the police as a paid confidential informer working

for the police. Mr. Johnson statements to the police was offical-

ly recorded into DD'5's and Mr. Johnson viewed over a 1000 photos

subsequently picking out appellant-defendant photo as one from

the group of robbers. Defendant-appellant photo was placed into

a photo array showed to several eye witness, who subsequently

identified appellant defendant. These facts testified too at

WADE hearing and trial by Lt. VINCENT DIDONATO from the 67th

precinct. When the People called Mr. Johnson to testify to he

above statement about defendant-appellant to the police, he

informed the prosecuting attorney that he will testify and dis-

pute the informationed relied upon by the people to arrest and

prosecute defendant-appellant. The people refused to call Mr.

Johnson as a witness and informed the court of this fact. The

court then offered defense attorney an opportunity to explore

Mr. Johnson, the witness who helped provide probable cause for

appellant-defendant arrest. Counsel refused, declining to even

interviewing this witness, who was in-court at the time.


### PROCEDURAL HISTORY

Aoppellant-defendant was convicted on September 22, 2000

of murder ing the second degree. Defendant was sentenced to

an indetermediate prison term of 20 years to life. A timely

notice of appeal was filed and Lynn W.L. Fahey was assigned

to represent defendant on appeal. Warren S. Landau Esq., submitt-

ed type written brief and defendant a pro se supplemental brief.

On May 2nd 2002., New York Supreme Court, Appellate DIvision

Second Department affirmed defendant-appellant conviction. See

People v. Hylton 2 A.D.3d 459 (2d Dept. 2003). The New York

Court of Appeals denied entry on March 16, 2004. See People

v. Hylton 2. N.Y. 2d 741 (2004) (Ciparick J.).

With the assistance of an inmate law clerk at Green Haven
Correctional Facility, in accordance with New York State Depart-
ment of Correctional Facility Directive 4483(E) in conjunction
with Bounds v. Smith, 430 U.S. at 831, on May 18, 2005 defendant-
appellant moved in the New York State Supreme Court to vacate
his conviction pursuant to Section 440.10 of the New York Cri-
minal Procedural Law. Defendant-appellant claimed that his trial
counsel was ineffective for failing to call as a witness, the
People confidential source informer who helped provide probable
cause for arrest, then recanted before being called to testify.

By Order dated October 14, 2005, The New York State Supreme
Court, Kings County, denied defendant motion to vacate his judg-
ment, on the grounds that said claim are procedurally barred
by CPL § 440.10 (2)(C), because adequate facts appear on the
record for the defendant to have raised these claims on direct
appeal.

On January 12, 2006, application to the New York State
Supreme Court, Appellate Division pursuant to 22 NYCRR §671.5
for a certificate granting leave to appeal from this detetmina-
ion was denied.


Dated: 6 APRIL , 2006
       Stormville New York

APPELLANT COUNSEL WAS INEFFECTIVE FOR FAILING
TO RAISE A MERITORIOUS ARGUMENT OF
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
FAILURE TO INTERVIEW OR CALL AS A WITNESS,
THE DISTRICT ATTORNEY CONFIDENTIAL SOURCE
INFORMER, WHO'S INFORMATION WAS USED TO
HELP FORM PROBABLE CAUSE TO ARREST APPELLANT,
THEN RECANTED SAID INFORMATION, WHILE WAITING
TO TESTIFY FOR THE PEOPLE. N.Y. Const. Art.
I B6; U.S. Const. Amend 6 & 14.

In People v. Baldi, 54 NY2d 137 (1981), The New York State Court of Appeals established the criteria for effective assistance of trial counsel. It held that the constitutional requirements are satisfied when counsel provides "meaningful representation". In the present case, trial counsel failed to provide meaningful representation according to People v. Baldi, and effective assistance pursuant to Strickland v. Washington, 466 US 668. (1984)

In People v. Bachert, 69 NY2d 593 (198), the New York Court of Appeals held "The common-law Writ of Error Coram Nobis proceeding should be brought in the appellate court who heard the appellant's appeal, addressing ineffective assistance of appellate counsel. In People v. Stultz, 60 NY2d the New York Court of Appeals ruled that the Baldi standard will apply to both Trial and Appellate counsels. Judge Rosenblatt said "there is no reason in having two separate standards, one for trial assistance and another for appellate assistance."

Although the New York Court of Appeals retained the "meaningful representation" standard, after the United States Supreme Court decided <u>Strickland v. Washington</u>, 466 US 668 (1984). Judge Rosenblatt wrote "...prejudice – a showing that counsel's ineffectiveness likely resulted in a determination unfavorable to the defendant – is pertinent, and possible pivotal in New York, but not dispositive... We would ...be skeptical of an ineffective assistance of counsel claim absent any showing of prejudice." Judge Rosenblatt said, appellate advocacy meets the "meaningful" standard <u>"if the facts, the law and appellate procedure, supported by appropriate authority and argument</u>." See <u>People v. Stultz</u>.

In the instant case, appellant will show that he was denied effective assistance of counsel on direct appeal because his appellate counsel failed to comprehend the facts of this case completely, wherefore failed to argue that trial counsel was ineffective.

Appellate counsel is not required to raise every colorable claim urged by his client, but is entitled to focus on key issues while winnowing out weaker arguments. <u>Jones v. Barnes</u>, 463 U.S. 745, (1983); <u>Jackson v. Leonardo</u> 162 F. 3d ; <u>Ehinger v. Miller</u>, 942 F. Supp . Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. <u>Tsirizotakis v. LeFevre</u>, 736 F.2d 57, 65 (2d Cir ), <u>cert denied</u>, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed2d 146 (1984).

Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted" significant and obvious issues while pursuing that were clearly and significantly weaker. Mayo v. Henderson, 13 F.3d ___; see also e.g., Jackson v. Leonardo, 162 F.3d ___; Franza v. Stinson, at 135; Torres v. Irvin, 33 F.Supp.2d at 278; Ehinger v. Miller, 942 F.Supp. at 932.

On direct appeal, appellate counsel did not competently grasp the facts of this case, wherefore it was not argued correctly. Appellate counsel should have raised obvious constitutional and statutory issue of ineffective assistance of trial counsel for the following reason. On the morning of April 4, 1999, Detective Steven Hector responded to the scene of a shooting. (Hearing Transcript. p.g. 6). He learned from Ms. Etoria that after she and her friends left the club, three individuals who had been at the club robbed the them, and shot her boyfriend. (HT 16). No one knew the robbers, but they think they might be able to make an identification. (HT10).

One day after the crime took place, a confidential informer by the name of Mr. Johnson went to the 67 prescient and told Lieutent Vincent DiDonato, that he was at a club called Jennele's on the evening of April 3rd through the early morning of April 4th, 1999. While he was there, he saw five "guys," four of which he knew. One was appellant, who was wearing a beige jacket, beige bandanna, and beige

and black sneakers. The informant related that as he was leaving at about 5:00 a.m., he saw the victim and his group getting into a white Lexus and another car. Around the same time, he also saw appellate ran past him and entered a jeep. The two cars pulled away and the jeep followed. (DiDonato Hearing Transcript: 89-90). The informer then picked appellant photo from a computer file. Appellant photo was placed in a photo array and shown to the deceased girl-friend, Ms. Eroica, who picked appellant photo as "he looked" like the mask robber. Five days later, she identified appellant from a line up. The court denied appellant's motion to suppress Etoria's identification at the Wade/Dunaway hearing. At trial, Ms. Etoria testified about her lineup identification and identified appellant in court. No one else identified appellant, and no other evidence linked appellant to the robbery    During trial, the prosecution asked for a recess to speak to Mr. Johnson, the confidential informer before calling him as a witness. After speaking to Mr. Johnson, the prosecution informed the court of the following:

Mr. FARKAS (prosecutor): Judge I am going to rest.

THE COURT: You are going to rest?

Mr. FARKAS: Yes.

THE COURT: Mr. Spiegel (defense attorney), are you prepared to proceed with your witness after Mr. Farkas?

Mr. SPIEGEL: May we approach the bench?

THE COURT: Yes.
Off the record.

(Whereupon, a discussion was held off the record.)

(Whereupon, a discussion was held off the record.)

THE COURT: All right, have the jury go back to the jury room, please.

Let's go on the record; you (the prosecutor), approached the bench and indicated that, perhaps, the reason why you are resting after indicating that you would call Mr. Johnson is that Mr. Johnson said something to exculpate the appellant.

Mr. Johnson is still here, so even if he's not still here, I guess you have to disclose that.

Mr. FARKAS: Judge, his memory does not assist my case.

THE COURT: All right, it doesn't exculpate him; is that what you are saying?

Mr. FARKAS: Judge, I will put on the record, I have nothing to hide, he say he doesn't remember Shiloh being at the club, he disputes the DD-5's as being incorrect.

THE COURT: So he was at the club that night?

Mr. FARKAS: Yes.

THE COURT: Mr. Spiegel, I guess he's available to be called as a witness at this moment.

Mr. Spegel: **I don't wish to call him.**

THE COURT: Okay.

Mr. Farkas: May I allow him to leave?

THE COURT: We're going to have him leave at this point if no one has an objection, yes...

(Trial Transcript: p.g., 1155-1156) (See Exhibit "A").

Appellate counsel was ineffective for failing to brief the issue of ineffective assistant of trial counsel for trial counsel failure to call as a witness, or interview the prosecution informer who provide information that led to probable cause to arrest appellant, then recanted. This contention is supported by the decision to appellant motion pursuant to CPL ß440.10

motion to vacate judgment based on trial counsel ineffectiveness. Appellant pro se motion was denied on the basis that "enough appear on the record, and thus should have been raised on direct appeal". (See Exhibit "B" Decision and Order to Appellant CPL 440. motion dated October 14 2005. By Hon. Joel Goldberd).

Appellant counsel argued in his brief four issues: POINT I: Appellant guilt of felony-murder was not proven beyond a reasonable doubt and his conviction was against the weight of the evendence...U.S. Const., Amend. XIV; N.Y. Const., Art. I, §6. Jackson v. Virginia, 443 U.S. 307 (1976); People v. Bleakley, 69 N.Y. 2d 490 (1987); POINT II: The court denied appellant due process by admitting identifications stemming from (A) unduly suggestive photo array, and (b) unduly suggestive lineup in which the people used fillers that was much older than appellant. U.S. Const. Amend. XIV; N.Y.Const., Art.I §6; POINT III: The people failed to produce the color photo array viewed by their sole identification witness, and admitted into evidence at the WADE hearing, denying appellant effective appellate review, that the array was unduly suggestive. U.S. Const., Amend. XIV; N.Y. Const., Art. I, §6; C.P.L. §450.10; People v. Jackson, 2002 W.L. 31319549 (2002); and POINT IV: The court denied appellant due process and fair trial by materially impaired his alibi and misidentification defense by (A) barring defense counsel from eliciting that his main alibi witness had informed the police of appellant's whereabouts at the time of the shooting before she knew when the shooting occurred, and (B) incompletely summarizing defense counsel's mistake identification defense,

in the jury charge. U.S. Const., Amends VI, XIV; N.Y. Const., Art. I, ß6; C.P.L. ß300.10

Had appellant counsel "completely grasp" the facts properly in the present case, that the State case begin with the informer statement and identification of appellant to the police; ineffective assistance of trial counsel claim regarding trial counsel failure to move to re-open the Wade/Dunaway hearing, and re-challenge the prosecution confidential informer information as unreliable, after the informer recanted during the people direct case; should have been the first point argued to the appellate division.

This identification by the informer was used by the police to place appellant photo in a photo array to show a single eye witness who could not identify appellant independently. The sole eye witness picked appellant from the photo array as "he looks like the guy" (see Hearing Transcript p.g. 9). During the pre-trials Wade/Dunaway hearing, the information provided by the informer was relied upon by the prosecution to rebut pre-trial challenge by trial counsel to suppress Ms. Eroica identification of appellant. (See H.T. p.g. 88).

Near the end of the prosecution direct case, it became clear to the Court and trial counsel that the information relied upon by the prosecution to begin their case was questionable, because this confidential source recanted his statement and identification of appellant. The trial Court then offered defense counsel an opportunity to call this witness and or at least interview this witness who was available to him at the court

house. Trial counsel declined. (See Exhibit "A")

Given the fact that the State's entire case starts with the informer information, it is inconceivable that trial counsel did not move to re-open the Wade/Dunaway hearing, after it became clear that the informer Mr. Johnson information was unreliable, as counsel claimed at the pre-trial Wade/Dunaway hearing. Trial counsel miss the opportunity to explore the circumstances surrounding the informer inconsistent statement, that the People relied upon to rebut counsel pretrial motion to suppress the informant information and Ms. Eroica identification. See Lynn v. Bliden, 00 Civ.4775 September 29, New York Law Journal, Page 1, column 5.

Appellate counsel performance was inadequate when he omitted the significant and obvious issue of ineffective assistance of trial counsel, while pursuing issues that were clearly and significantly weaker. Mayo v. Henderson, 13 F.3d at 533; see also, e.g., Jackson v. Leonardo, at 135; Torres v. Irvin, 33 F.Supp.2d at 278; Hurd v. Keane, 1997 WL 582925 at 82; Ehinger v. Miller, 942 F.Supp. at 932; Benn v. Stinson, 91 F.Supp. at 206. When the confidential source who helped provide probable cause to arrest appellant recanted, and trial counsel failed to moved to re-open the Wade/Dunaway hearing, to expllore the circumstances surrounding the informer Mr. Johnson inconsistent statement and identification of appellant; including the failure to explor whether Mr. Johnson was contacted by anyone during the time separating his initial contact with the police, to the time he recanted while in the witness holding area in the

court house, as Hon. Golberg asserted in his Order and Decision, denying appellant CP1 B440.10. motion. Appellate counsel was ineffective for failing to brief this issue.

The Hon. Joel M. Goldberg decision is based on supposition and the honorable should have held a hearing to explore these supposition. There was no physical evidence against appellant at trial and the prosecutor relied solely on the testimony of the deceased girl-friend, Ms. Rebecca Eoria, and the questionable information provided to the police by the informant. Given the fact that the State entire case started with the confidential source, and the only eye witness identification of appellant stemmed from the informant information that the confidential source provided, it is inconceivable that trial counsel did not move to reopen the Wade/Dunaway hearing and renew his position that the confidential source information was unreliable.

The trial transcript show defense counsel cold-bloodedly refused to even interviewed the person who put his client name in the investigating police hands; defense counsel refused to talk to the first witness who picked his client photo from a computer file, then recanted his information and identification to the prosecutor as false. Trial counsel did not find it interesting to even talk to this witness. This was no sound trial strategy by ignoring this relevant evidence, as asserted by the Hon. M. Goldberg stating "...sound defense strategy to protect the defendant from being implicated in the crime of witness intimidation", denying appellant CPL B440.10 motion.

Appellate attorney POINT I could have been stronger had

counsel successfully move to reconstruct the Wade/Dunaway hearing and successfully suppressed the information provided by the confidential source. Then trial counsel could have moved for an independent source hearing to see if the only eye witness could independently identify appellant - if not, move to suppress that identification of Ms. Etoria too. To ignore the deficiency of trial counsel to renew his argument that the confidential source information is unreliable, when it became evident that such is the case, is no excuse to deny appellant his constitutional rights to effective assistance of counsel, based on speculation as the Hon. Joel Goldberg did in his Decision and Order, stated:

> "defense counsel may...have suspected...the recantation
> as untruthful...perhaps, due to...defendant or others
> acting on his behalf...", or because "the recantation
> may be the product of witness intimidation...connected
> to appellant...had defense counsel learned of
> such...counsel would have to relief him self from
> the case and cause a mistrial... So it was sound trial
> strategy to protect the appellant from being possible
> implicated in the crime of witness tampering...

So appellant interest was best served by ignoring appellant constitutional right to effective assistance of trial counsel, when trial counsel refused the Court opportunity to explore this witness. A hearing should have been held on appellant pro se CPL 440.10 motion, before blaming appellant of witness tampering, and wherefore, his fault why trial counsel was ineffective for failure to represent appellant properly.

It was no secrete that trial counsel trial strategy was that of an alibi. Trial counsel failed to present this defense completely by failing to explore and present that the

confidential source recantation to the jury. Trial counsel inaction was <u>Both</u> a lack of "meaningful representation", pursuant to <u>People v. Baldi</u> 54 NY2d 137 (1981); and or "objectively unreasonable", pursuant to <u>Strickland v. Washington</u> 466 US 668 (1984). The error by trial counsel seriously undermine the to outcome reached at trial; had trial counsel conduct met the professional standard of effective assistance of counsel pursuant to N.Y. Constitution Art. I ß6, and U.S. Constitution Amendment 6 & 14, the jury would likely have found less than reasonable doubt and acquit appellant.

Appellate attorney should have raised the issue of ineffective assistance of trial counsel to the Appellate Division, which is a stronger appellate issue that <u>Point I</u> raised by appellate counsel. <u>POINT I</u> in appellant brief, "against the weight of the evidence" argument, is weaker than ineffective assistance of trial counsel for failure to move to reopen the <u>Wade/Dunaway</u> hearing to explore the initial identifying witness recantation, or for failing to present such to the jury. The <u>Black Law Dictionary</u> definition of "against the weight of the evidence" as: not sufficient supported by the evidence in the record. The testimony alone of the investigating police how the confidential source provide appellant information to them, and then picked appellant photo from a computer file, after viewing over a thousand photos; which was then placed in a photo aray and shown to the eye witness who identify appellant as "he look like the guy"; then identify appellant in court as one of the men who robed and killed her boy-friend is sufficient

evidence that a rational trier of the facts could have used and found proof of guilt beyond a reasonable doubt for murder in the second degree, pursuant to CPL 125.25 (3). <u>Jackson v.</u> <u>Virginia</u>, 443 U.S. at 324. Had appellate counsel briefed the issue of trial counsel failure to moved to explore the confidential informer recantation, then appellant counsel claim of against the weight of the evidence could have been successful.

In conclusion, appellant counsel provided constitutionally inadequate assistance on direct appeal when counsel clearly omitted significant and obvious issue such as <u>POINT II</u> <u>supra</u>, which could have led to reversal, while pursuing issues that were clearly and significantly weaker. As result, appellate counsel should be held ineffective and appellant granted a new appeal.

<u>CONCLUSION</u>

FOR THE FOREGOING REASONS AS RAISED IN POINTS I AND II, APPELLATE COUNSEL SHOULD BE HELD INEFFECTIVE, AND APPELLANT GRANTED A NEW APPEAL

Dated:

Respectfully Submitted

Shiloh Hylton 00A5948

EXHIBIT 4(B)

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK )
                   )ss.:
COUNTY OF DUTCHESS)

    I, SHILOH HYLTON,   being duly sworn deposes and says:

    I am the appellant herein and have served a true and correct copy of the following documents:

    NOTICE OF MOTION AND AFFIDAVIT FOR CERTIFICATE TO

    APPEAL TO THE CHIEF JUSTICE OF THE COURT OF APPEALS.

On:

    1) CLERK OF THE COURT/ C.O.A.

    2) KINGS COUNTY DISTRICT ATTORNEY'S OFFICE

    By depositing a true and correct copy in a United States Postal Mailbox located on the compounds of GREEN HAVEN CORRECTIONAL FACILITY, located at, P.O. BOX 4000, STORMVILLE, N.Y. 12582, on the 7th day of September. 20006.

Dated: September 7, 2006
    Stormville, N.Y.

                                  Shiloh Hylton(00-A-5943)

Sworn to before me this
7th day of September 2006

_____
  NOTARY PUBLIC
**PAUL  J BRAUN**
NOTARY PUBLIC NEW YORK ST
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5878658
    EXP. DEC. 23. 2006

SUPREME COURT OF THE STATE OF NEW YORK
COURT OF APPEALS
------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                 Respondents,

      -against-

SHILOH HYLTON,

               Defendant.

------------------------------------------X

**APPLICATION TO CHIEF JUSTICE OF THE COURT OF APPEALS FOR CERTIFICATE GRANTING LEAVE TO APPEAL TO THE COURT OF APPEALS PURSUANT TO C.P.L. §460.20**

**Indictment No.# 3354/99**

Dear Hon. Judith Kaye:

    PLEASE TAKE NOTICE, that the above named defendant-appellant will make application before Your Honor, Justice of the Court of Appeals, at a chamber No. ___, located at 20 Eagle Street, Albany, New York, on the 10th day of October 2006, or soon thereafter at 10:00a.m. in the forenoon of that day for a certificate pursuant to Section 460.20 of the Criminal Procedure Law of the State of New York, granting permission to appeal and certifying that there is a question of law in the above entitled action which ought to be reviewed by the Court of Appeals, and allowing an appeal to said Court from an order of the Appellate Division: Second department, entered on the 25th day of July, 2006, denying defendant's pro se motion of a writ of error coram nobis an from each and every part of said order.

                     Respectfully Submitted,

                     Shiloh Hylton(00-A-5948)
                     Appellant
                     P.O. Box 4000
                     Stormville, N.Y. 12582

SUPREME COURT OF THE STATE OF NEW YORK
COURT OF APPEALS _____ X

THE PEOPLE OF THE STATE OF NEW YORK,

                     Respondents,

        -against-

SHILOH HYLTON,

               Defendant.

-------------------------------------X

**AFFIDAVIT IN SUPPORT OF APPLICATION TO CHIEF JUSTICE OF THE COURT OF APPEALS FOR CERTIFICATE GRANTING LEAVE TO APPEAL TO THE COURT OF APPEALS PURSUANT TO C.P.L. §460.20**

Indictment No.# 3354/99

STATE OF NEW YORK  )
                 )ss.:
COUNTY OF DUTCHESS )

    I, SHILOH HYLTON, being duly sworn deposes and says:

    1.   I am the defendant-appellant in the above entitled caption and as a layman in matters of law, I submit this affidavit Pro Se.

    2.   I am personally familiar with all the facts and the circumstances stated herein.

    3.   This affidavit is submitted in support of an application to the Chief Justice of the Court of Appeals for a certificate granting permission to appeal to the Court of Appeals pursuant to Section 460.20, of the Criminal Procedure Law and of the Rules of this Court from an order of the Appellate Division: Second Department dated July 25, 2006, erroneously denying defendant's writ of error coram nobis.

    4.   On April 4, 1999, at approximately 5:00 a.m., in the County of Brooklyn, the defendant, [allegedly] with Lonnie Tillery and an unapprehended accomplice, held up at gunpoint a group of people, including Wendell Rosiclair, whom they had followed from a club they all had attend. The defendant and his accomplices robbed

the victims and when Rosiclair struggled to remove his necklace, Lonnie Tillery shot him in the chest, killing him.

5. The defendant was charged under Kings County Indictment No. 3354/99, with two counts of Murder in the Second Degree (P.L. § 125.25[2], [3]), three counts of Robbery in the First Degree, (P.L. §160.15[1], [2], [4]), one count of Criminal Possession of a Weapon in the Third Degree (P.L. §265.02[4]).

6. During a <u>Wade</u> hearing, Detective Steven Hector testified that on April 4, 1999, he obtained a tip from a confidential [informant] the street names of the robbers were Lonnie, Shiloh, Bill, and Sixteen (Hector: H. 12). Detective Vincent DiDonato testified that on the next day, April 5, 1999, during an interview with the informant, told him that he had seen Shiloh, Lonnie, Sixteen, and Bill together with a fifth person, who name he did not know, at a club the previous morning from 2:00 until 5:00 a.m. (DiDonato : H. 8).

The [informant] said that he had left the club at approximately 5:00 a.m. and observed four of the five men in Shiloh's group climb into a dark colored jeep (DiDanato: H. 90).

7. The informant alleged that he had seen Shiloh run after his group and jumped into the [car" with them, and pursued the two cars in Wendell Rosiclair group (DiDonato: H. 89-90).

On April 6, 1999, Rebecca Etria identified the defendant from a photo array before Detective DiDonato. She also identified Lonnie Tillery from a photo array (Hector: 18-21; DiDonato: H. 19).

-2-

8.   At trial, Rebecca Etria testified that on the night of the shooting, defendant was clad in beige, Lonnie Tillery was wearing a multicolored predominately red "Coogi" brand sweater, a third person was wearing a gray "Enyce" brand sweatsuit (Etoria: 732, 736-37, 747-47, 758, 771-72).

9.   At the end of the People's case, the prosecutor informed the Court that they would not be calling the confidential informant Mr. Johnson as a witness. The Court inquired of the prosecutor, whether Mr. Johnson had said anything exculpatory about the defendant. The prosecutor explained their reason for not calling Mr. Johnson was because Mr. Johnson said that he did not recall defendant being at the club and that the police report indicating that he had initially told that to the police was wrong.

10.   The [C]ourt then informed defense counsel that Mr. Johnson would be available for the defense to call as a witness, and defense counsel replied, that he did not wish to call the witness (T.T.: 1155-56).

11. After a jury trial, the defendant was found guilty of Murder in the Second Degree (P.L. §125.25[3]).
On October 17, 2000, defendant was sentenced to an indeterminate term of imprisonment of 25 years to life to run consecutively with any sentence imposed pursuant to defendant's violation of parole.

12.   An Notice of appeals was filed with the Appellate Division: Second Department. Assigned appellate counsel [chose] to raise four claims in Mr. Hylton's behalf: (1) the evidence was

-3-

legally insufficient to support judgment of conviction;   (2)
the hearing court improperly determined that the line-up  procedure
in which an alleged eyewitness identified defendant was  not unduly
suggestive;   (3)  the trial court improperly precluded the defense
from eliciting exculpatory evidence that  defendant's  mother  told
the police where her son was on the morning of the shooting;  and
(4)  trial court's jury charge on identification was improper.

13.   In a pro se supplemental brief,  defendant raised four
additional claims:  (1) that the prosecutor's delay in turning over
Brady material denied him a fair trial;  (2)  he was  denied a fair
trial because court would not permit defense counsel  to  elaborate
on some of his objection;  (3)  defendant was denied a  fair  trial
because court improperly chastised defense counsel before the jury;
(4)  the prosecutor improperly impeach the credibility of a defense
witness the witness's prior statement.

14.  On June 18, 2001,  the  Appellate Division  unanimously
denied defendant's appeal from judgment of his conviction. (see:
People v. Hylton, 2 A.D.3d 459 (2d Dept. 2003).

15.   On March 16, 2004,  the  Court  of  Appeals  had  denied
defendant's leave to appeal. (see:  People v. Hylton, 2 N.Y.2d 741
(2004).

On May 26, 2005,  Mr. Hylton moved to vacate judgment pursuant
to C.P.L. §440.10, contending that he was denied a fair trial due
to ineffective assistance of counsel for failing to call Mr. Johnson

-4-

as a witness. Where Mr. Johnson is the confidential informant who initially told the investigating officer that defendant was at the club and was allegedly involved in the robbery has recanted his prior testimony.

16.   In support of defendant's claim an affidavit by Ricardo Johnson recanting his prior statement in an unrelated case, was submitted to demonstrate Mr. Johnson's propensity of being an uncreditable witness. In an affirmation in opposition to defendant's supplemental papers, the People affirmed that the file of the Kings County District Attorney's Office contained an unredacted copy of that affidavit under People v. Moore, Kings County Indictment No.# 14177/96. In a decision of Moore's motion to vacate judgment, the court noted that Ricardo Johnson testified at a hearing on the motion that the testimony of Ricardo Johnson, a convicted felon who serving a twelve years to life sentence, was "wholly" "untrustworthy" and "inhernently incredible."

17.   In Mr. Hylton's supplemental papers, defendant also had raised that trial counsel was ineffective for failing to reopen the suppression hearing after Mr. Johnson recantation.

18.   The trial Court erroneously denied defendant's motion to vacate judgment of conviction. (see: People v. Hylton, 9 Misc.3d 1118A Supreme Ct. Kings Co. 2005). The Court held that defendant's motion is procedurally barred pursuant to C.P.L. §440.10(2)(c), because defendant should have raised issues on direct appeal.

19.   Prior to Trial Court's decision, the Legislature of this State had amended Section 440.10 to provide that ineffective

-5-

assistance of counsel claim shall be exempt from the procedural bar to collateral review imposed by provision 2(b) and 2(c). (see: McKiney's Session Law of May 2005, p.A-190-191). Upon appeal to the Appellate Division: Second Department of the denial of defendant's §440. motion, the above mentioned provision of the Session Law was apparently overlooked by the Appellate Court during their determination.

20.   Trial Court erroneously held determined that defendant's claim were meritless. Ambiguously asserting that calling Johnson as a witness would open the door for prosecution to elicit for the jury that Mr. Johnson implicated defendant in the robbery.

21. Trial Court had made numerous [presumptions] that Mr. Johnson may have been intimidated by the defendant, that Johnson would be unlikely to convince the court that the "police" did not testify truthfully when they testified that Johnson implicated the the defendant in his decision and order.

22. On January 5, 2006, the Appellate Division denied defendant leave to appeal from the order denting defendant's motion.

For the reasons set forth in the accompanied Memorandum of Law, defendant's application for a certificate granting permission to appeal to the Court of appeals should be granted.

Dated: *September*
        Stormville, N.Y.

                                    Respectfully Submitted,

                                    *Shiloh Hylton*
                                    Shiloh Hylton(00-A-5948)

-6-

SUPREME COURT OF THE STATE OF NEW YORK
COURT OF APPEALS                              X

THE PEOPLE OF THE STATE OF NEW YORK,    :

               Respondents,    :

                                     :

        -against-    :    Indictment No.# 3354/99

                                     :

SHILOH HYLTON,    :

               Defendant.    :

------------------------------------:

## MEMORANDUM  OF  LAW

**DEFENDANT   WAS DENIED HIS DUE PROCESS RIGHT
EFFECTIVE   ASSISTANCE   OF   COUNSEL.  WHERE
APPELLATE   COUNSEL   FAILED   TO   RAISE   THE
INEFFECTIVENESS OF APPOINTED TRIAL COUNSEL.
(USCA. CONST. AMENDS. V, VI, AND XIV;  N.Y.
CONST. ART.  I,  § 6).**

Appellant Hylton is entitled by the  due process clause of the
Fourteenth Amendment to a trial free from  [f]undamental unfairness,
"including  any  unfairness  that  would  stem  blatantly  from the
incompetence  of  trial  counsel."(**Strickland v. Washington**,  466  U.S.
668;  **People v. Benevento**, 91 N.Y.2d 708).  Appellant  was  deprived
[effective]  representation  of  both  trial  and appellate  counsel.
Therefore,  appellant's  motion  should  be  granted.

Appellant has for the past 7 years unsuccessfully pursue every
avenue opened to him in an effect to obtain a decision on the merit
of his appeal to prove that is his conviction was unlawful.  Trial
Court had erroneously denied defendant's ineffective assistance  of
counsel  claim  as  meritless  and  barred  under  C.P.L.  §440.10(2)(c).
Trial  Court's  determination  was  based  primarily  on  "presumptions
and  [personal]  opinion  and not,  as  a  matter  of  law,  based on the

facts in the record or the laws governing this State. (See: Hon. Joel M. Goldberg Decision & Order 10/14/05; also see McKinney's Session Law May 2005, p.A-190 - A-191).

Confidential informant's statement to investigating officers initiated probable cause for the appellant's arrest. Therefore, the recantation of informant's prior statement warrants the reopening of the Wade hearing. Where the validity of Mr. Johnson's testimony would demonstrate to the Court and the jury material facts essential to determine whether the appellant participated in the robbery and death of Wendell Ricardo. As well as determine whether Mr. Johnson's statement would corroborate the testimony of Detective DiDonato when he testified that Mr. Johnson told him that he viewed the appellant jump into a jeep with four other men. (Det. DiDonato: 90). If defense counsel would have called Mr. Johnson as a witness, it would, indeed, open the door to allow the prosecutor to elicit any vital information necessary to insure a [law]ful conviction. Nonetheless, appellant declares his innocence and any statement by Mr. Johnson would not incriminate the appellant in the commision of this crime. (In re Winship, 397 U.S. 358, 385).

Counsel's course of action in not interviewing Mr. Johnson, not calling him as a witness or request the reopening of the Wade hearing, created a conflict of interest and can not be considered a strategic decision or in the best interest of his client. Where any competent professional defense advocate would have taken advantage of the opportunity to subject the prosecutor case to a adversarial

testing. (Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993); Wood v. Georgia, 450 U.S. 261, 271; United States v. Cronic, 466 U.S. 648; Strickland v. Washington, 466 U.S. at 659). Especially given the fact that Rebecca Etoria testified that she observed the entire incident sitting in a parked car 15 feet away, gave the description that the perpetrators worn bandanas during the time of robbery. If Johnson's recantation of his prior statement was properly presented to the jury, would have cast doubt in the minds of the juror of the reliability of Ms. Etoria's identification of appellant as one of the perpetrators. (Neil v. Bigger, 409 U.S. at 199-200; Manson v. Braithwaite, 432 U.S. 98, 114-16); Raheem v. Kelly, 257 F.3d 122, 138 (2d Cir. 2001).

In light of the above mentioned contention, defense counsel's deficient conduct was prejudicial to the defendant and cannot be considered harmless. (Id at 466 U.S. 668). The undisputed fact that surrounds the underlying offense for which appellant was convicted are of such nature that rest primarily on identification, counsel's deficiencies fall far short of the undermining confidence in the outcome of appellant's trial.

Indeed there is no dispute that sufficient facts appears in the record as trial Court had determine. Nevertheless, appellant's contentions were not properly preserved for Appellate Court review as required by Procedural Rules of the Court. (see: Section 470.05(2) of the Criminal Procedure Law). Nor shall appellant be barred for for presenting a Sixth Amendment violation on collateral review. see Session Law of May 2005, p.A-190-191; C.P.L. §440.10).

-3-

## Ineffective Assistance Of Appellate Counsel

Due to County Court's determination  of appellant's §440.10 motion,  holding that  defendant's contention of ineffective assistance of counsel should have been  raised  on  direct appeal pursuant to Section 440.10(2)(c) of the Criminal Procedure Law, appellant raised an error coram nobis based on  Hon. Goldbergs' Order and Decision  for  appellate  counsel  failure  to  raise ineffective assistance of trial counsel on direct appeal.

Appellant argues that the Appellate Division  erred  on  several ground in failing the reach the merit of appellate's  ineffective assistance of appellate counsel claim for failing to raise  the ineffectiveness of trial counsel.   Hon. Joel Goldberg S.C.J. , held that counsel's deficient performance was blatantly supported by the record.   ALthough the Court determined that counsel should not be deem ineffective for such deficient performance  and  gave several  personal opinions  and  illustration  in  support of his decision.  Nevertheless,  trial counsel incompetence has not only denied appellant of a fair trial,  but allowed a innocent man to be wrongfully convicted. (see Lindstadt v. Keane, 239 F.3d  at 199 (2d Cir. 2001).  This was substantially prejudicial. (Id. at 466 U.S. at 687).

Defesne counsel decision not to call Mr. Johnson as a witness was an extraordinarily a poor decision.  Indeed, defense counsel''

-4-

decision not a call a particular witness relates to trial strategy
(see United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998),
and courts has been hesitant to disturb such strategic decisions.
(Id.at 466 U.S. at 689). Nevertheless, strategic choices made
by an attorney whose client ends up being convicted have a way of
looking inadequate in the bright light of highsight. (see: Knott
Mabry, 671 F.2d 1208, 1212 (8th Cir. 1982). But the focus of
analyzing the performance prong of the Sixth Amendment ineffective
assistance of counsel  claim must be on the "reasonableness" of
the decision when they were made. (see United States v. Bayless,
201 F.3d 116, 130 (2d Cir. 2000).  Nevertheless, in the case at
bar,  there is no suggestion in the [record] that defense counsel
opted to prepare a defense. As a conscious decision, see Moore v.
Johnson, 194 F.3d 586, 610 (5th Cir. 1999),  holding  that  a
particular decision could not be labeled  "strategic"  where inter
alia, the attorney had  "no idea"  why the decision had been
taken.  Bean v. Calderon, 163 F.3d 1073, 1079 (9th Cir. 1998),
noting that a decision cannot be characterized  as "strategic"
where it was a result only of  "confusion".  United States v. Gray,
878 F.2d 702, 712 (3d Cir. 1989)  "counsel's behavior  was  not
colorably based on tactical considerations but merely upon lack
of diligence."   As to  "reasonably informed"  decisions, see
Williams v. Taylor, 529 U.S. 362, 395 (2000),  noting  that  a
decision based on legal misunderstanding was not animated  by
[strategic calculations; Kimmelman, 477 U.S. at 368, noting that

-5-

a decision based on ignorance of relevant facts and "mistaken beliefs" was not based on "strategic consideration." Smith v. Stewart, 189 F.3d 1004, 1010 (9th Cir. 1999), holding that an attorney's decision not to pursue certain evidence was not strategic" where inter alia, it was based on lack of understanding of what constituted such evidence." Nonetheless, in the case at bar, counsel failed to investigate the potential aspect of the recanted testimony. Even worse, failed to discuss the matter with his client. Counsel's decision cannot be considered a reasonable decision in light of the circumstance in the case.

Appellant had challenged the effectiveness of his trial and appellate counsel, claiming because of their failure to raise or preserve several issues has denied him his right to [effective] assistance of counsel.

The review of this issue is guided by Strickland, 466 U.S. 668, which held that in order to succeed on a claim of incompetent counsel, a defendant must show that counsel's performance was deficient and that deficiency prejudice [his defense]. A defendant must also show that counsel's errors so serious "that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. (Id.). The measure against which these components are judge is that an objective standard of reasonableness. Judging the reasonableness of counsel's performance requires that [every] effort be made to eliminate the distorted effects of highsight, to "reconstruct the circumstances of counsel's challenged conduct,

-6-

and to evaluate the conduct from counsel's perspective at the time.
Because of the difficulties inherent in making the evaluation,  a
court must indulge a  strong presumption that counsel's  conduct
fails within the wide range of reasonable professional assistance;
that is a defendant must overcome the presumption that,  under the
circumstances, the challenge action might be considered sound trial
strategy.

Although there is no set  litmus test for determining  what
constitutes ineffective or inadequate representation (People v.
Ellis, 81 N.Y2d 854); People v. Baldi, 54 B.Y.2d 137, 146); People
v. Droz, 39 N.Y. 3d 457, 462), but rather the law, the evidence,
and the unique circumstances of each particular case must be viewed
as a whole People v. Rivera, 71 N.Y.2d 705, 708); People v. Jackson,
52 N.Y.2d 1027).

In the matter before this Court,  with a review of the record,
this Court should conclude that  appellant was  denied  effective
assistance of counsel.  Initially despite appellant's alibi claim,
the failure to interview a confidential informant who recanted his
prior statement implicating the defendant was prejudicial and denied
the defendant an opportunity to demonstrate to the jury that he has
been mistakenly identified as one of the perpetrators. Prior to the
conclusion of appellant's trial,  it was brought to the attention
of the Court and defense counsel that Lonnie Tillery had confessed
to the felony murder and stated to the District Attorney   that  the
appellant was not involved in the robbery or shooting, failed to
inform the jury of such exculpatory evidence.

-7-

The defense theory was a strategic choice and would be entitled to deference if it had been made after thorough investigation (see: Strickland, 466 at 668-90). The evidence indicates that defense had investigated Hylton's theory that he was home with his mother and family during the time of the murder and nothing else. "Strategic choice made after less than complete investigation are reasonable precisely to extent that reasonable professional judgment support the limitations on investigation (Id. at 690-91). Defense counsel pursued [only] an alibi defense strategy. A reasonable attorney would have known, after discovering that (1) confidential informant had recanted his prior statement implicating the defendant, and (2) that alleged accomplice, Lonnie Tillery, had confessed to committing the crime and gave a statement to the prosecutor exonerating his client in any participation, that the appropriate defense would be a mistaken identification defense. (People v. Rojas, 213 A.D.2d 56; also see: People v. Droz, (supra) at 462); People v. Bennett, 29 N.Y.2d 462; McMann v. Richardson, 397 U.S. 759; People v. Rodriguez, 94 A.D.2d 805, 807). A reasonable defense attorney would have investigated other defense theories. (see: Henderson, 926 F.2d 706, ("Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and develop evidence to support those theories). Here in the case at bar, defense counsel should have investigated and combined Hylton's alibi theory and identification theory. Cause testimony from alibi witnesses would bolster rather than detract from a defense of mis-identification. (see Romero, 46 F.3d 1024, 1030).

-8-

A tactical decision to rely on alibi defense in no way forecloses the current 'use' of a misidentification defense. (in comparison see: Armontrout, 900 F.2d at 130).

This case, similar to People v. Rojas, (supra) 213 A.D.2d 56, the Appellate Division: First Department held that defense counsel was ineffective and identification procedures was improper and prejudicial. In Rojas, the defendant was granted an evidentiary hearing on his C.P.L. §440. motion. The defendant was able to hire a [second] counsel to represent him during these proceedings. Where counsel hired an experience criminal investigator, investigated his client's case sufficiently to gain relief. Unfortunately, Mr. Hylton relied primarily upon the professionalism of his trial counsel to sustain his innocence. After the prosecutor had informed defense counsel of the availability of confidential informant. Counsel choice not to interview this witness or make any attempt to call his as a witness. Nor did counsel discuss this matter with his client or explain his reasons for his decision.[1] Even if the informant would have refused to testify, counsel failed to hire an experience investigator who could testify at trial and tell the jury the contents of his investigation with the informant. Counsel decision cannot be considered reasonable in light of the circumstances of this case. (Kimmelman, 477 U.S. at 384; Henderson, 926 F.2d at 711)("Counsel has a duty to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence").

---

[1]   In trial Court decision & Order denying appellant's §440. motion, the court asserts that

-9-

"defense counsel" may very well also suspected the "recantation" to be the product of witness intimidation that could be corrected to the defendant." (See Hon, Goldberg Decision & Order dated 10/17/05). It is very unlike for a Supreme Court Justice to make such an erroneous and profound statement. When the [record] affirmed that defense counsel 'never' interviewed this witness. Nor was there any statement made by informant to the prosecutor in regard to any witness intimidation that would [cure] defense counsel's deficient performance. (see Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001).

─────────────────────────────

When the evidence does not unquestionably establishes the appellant's guilt and there exist substantial doubt with respect to Ms. Etoria's ability to identify a perpetrator that worn a mask or a bandana covering their face during the commission of the crime, or worn attire that simulates that worn by the appellant, such a risk by defense counsel should not be tolerated in which appellant's liberty is at stake. Thus, defense counsel's failure to investigate the People's case, or consider alternative defense theories, interview confidential informant materially prejudice Mr. Hylton's defense. Therefore, defense counsel's errors overwhelming demonstrates that the trial Hylton received cannot be relied upon as a [measure] of his guilt or innocence. Absent of defense counsel's failures, there exist a reasonable probability that the outcome of Hylton's trial would have been different. (**People v. Bussey**, 6 A.D.3d 621 2d Dept. 2004); **People v. Bennett**, (supra) 29 N.Y.2d 462); see **People v. Fogle**, 307 A.D.2d 299; also, **People v. Foster**, 200 196).

-10-

The inescapable fact that an Appellate Counsel is not obligated to raise every material issue on the face of the record, (People v. Baldi, (supra); People v. Stultz, 2 N.Y.2d 277). When it comes to the choice of the issues to be raised, a criminal defendant is "Power[less] to dictate to an appellate counsel which meritorious issues ought to be presented. Furthermore, appellate counsel are granted latitude on deciding which point to advance and how to order them (Id. at 54 N.Y.2d 137). Furthermore, this Court has held that when an Appellate Term who was unable to entertain certain issue that were not preserved on direct appeal from his conviction, did not leave defendant without a [remedy] in that he could move to vacate judgment on grounds that his conviction was obtained in violation of his constitutional right, People v. Federico, 91 Misc.2d 131 (1977). As appellant has stated earlier, he has for the past 7 years has unsuccessfully pursued every avenue available to obtain a decision on the [merit] of his claims that he has been convicted unlawfully.

WHEREFORE, defendant respectfully ask this court to utilize its inherent power to vacate appellant's conviction in the interest of justice.

Respectfully Submitted,

Shiloh Hylton(00-A-5948)
Appellant
Green Haven Correctional Facility
P.O. BOX 4000
Stormville, N.Y. 12582

Sworn to before me this
___ day of September, 2006

Notary Public

PAUL J BRAUN
NOTARY PUBLIC NEW YORK ST
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5070658
EXP. DEC. 23, 2006

-11-

SUPREME COURT OF THE STATE OF NEW YORK
COURT OF APPEALS _____X

THE PEOPLE OF THE STATE OF NEW YORK,

               Respondents,

        -against-

SHILOH HYLTON,

           Defendant.

-----------------------------------X

NOTICE OF MOTION
TO PROCEED IN FORMA
PAUPERIS

Indictment No.# 3354/99

      PLEASE TAKE NOTICE, that the above named defendant-appellant
will move upon his annexed affidavit, sworn to on the _____ day of
_____, 2006, and upon all proceedings heretofore had herein,
a motion pursuant to Civil Practice Law and Rules §§1101 and 1102
will be made at a term of this Court to be held at the Courthouse
located at 20 Eagle Street, Albany, New York, at 10:00 a.m., in
the forenoon of that day or soon thereafter as defendant-appellant
can be heard for an order permitting him to prosecute a petition
to appeal a Writ of Error Coram Nobis, as a poor person on the
ground that he has insufficient funds or property to enable him to
pay the cost, fees and expenses necessary to prosecute said action.

      WHEREFORE, it is respectfully requested that this Court grant
the instant motion for appellant to proceed in forma pauperis, and
for such other and further relief as this Court deems just and
proper.

Dated: *September*_____, 2006
      Stormville, N.Y.

                      Respectfully Submitted,

                      Shiloh Hylton (00-A-5948)

SUPREME COURT OF THE STATE OF NEW YORK
COURT OF APPEALS _____ X

THE PEOPLE OF THE STATE OF NEW YORK,

                Respondents,

         -against-

SHILOH HYLTON,

              Defendant.

---------------------------------------X

**AFFIDAVIT IN SUPPORT OF MOTION TO PROCEED IN FORMA PAUPERIS**

**Ind. No.# 3354/99**

STATE OF NEW YORK  )
                 ss.:
COUNTY OF DUTCHESS  )

    I, SHILOH HYLTON, being duly sworn deposes and say that:

    1.    I am the defendant in the above entitled caption and make this affidavit in support of my motion for permission to proceed as a poor person.

    2.    I am personally familiar with all the facts and statements stated below to the best of my knowledge except where stated upon information and belief. I do believe all stated in to be correct.

    3.    I am presently incarcerated at GREEN HAVEN CORRECTIONAL FACILITY, located at P.O. BOX 4000 STORMVILLE, N.Y. 12582.

    4.    I am unable to pay the cost, fees and expenses necessary prosecute this action.

    5.    I have less than $20.00 in my institutional account, and I make less that $5.00 per week from my institutional program.

-1-

6.   I own no stocks, bonds, checking or saving accounts. Nor any real property.

7.   There is no one I know who may have a beneficiary interest in the outcome and will be willing to help pay the cost to prosecute said petition.

8.   No other request for relief sought have been made in this Court of any other court.

WHEREFORE,   I respectfully request that an order permitting the appellant to prosecute said petition as a poor person pursuant to CPLR. §1101 and 1102, and grant any and such other relied as this Court may deem just and proper.

Respectfully Submitted,

Shiloh Hylton (00-A-5948)
Green Haven Corr. Fac.
P.O. Box 4000
Stormville, N.Y. 12582

Sworn to before me this
7th day of September 2006

NOTARY PUBLIC

PAUL J BRAUN
NOTARY PUBLIC NEW YORK ST
QUALIFIED - DUTCHESS CTY.
COMMISS. #01BR5070658
EXP. DEC. 23, 2006

-2-

EXHIBIT- 5

Smith H. Thomason

GREEN HAVEN CORRECTIONAL FACILITY

P.O. BOX 4000

STORMVILLE, NEW YORK 12582

8-16-05

TO The Prose office
UNITED STATES DISTRICT
COURT EASTERN DISTRICT
OF NEW YORK 225
CADMAN PLAZA EAST
BROOKLYN, NY 11201

Dear: Sir/Madame,

ON 9-22-2000 I was convicted of murder in
The 2nd degree [PL 125.25(3)], I was Then sentenced to 20
years to Life imprisonment on 10-17-2000 in the supreme
court of the state of New York, county of Kings, Criminal Term
Part 22; 120 SCHERMORHORN St BKLYN, N.Y. 11201. The Lawyer
who represented me was Frederick Spiegel, ESQ. At 26
court St BKLYN, N.Y. 11201. After Trial I Filed a Notice of
Appeal to the Appellate division 2nd Dept. 45 MONROE PL.
BKLYN, NY 11201. I Appealed and the judgment was affirmed.
The Date of the decision is 12-1-03, cite 2.A.D. 3d 459
After the judgment was affirmed I Filed an APPLICATION for
Leave to Appeal to the New york state court of Appeals.
Leave to Appeal was Denied on March 16, 2004. I should
be within the statute of limitation because my judgment
become Final on march 16, 2004, I did Not file an application
for writ of certiorari to the United states supreme court

So I should have had until 6-13-2003 to file my petition for federal habeas corpus, however I did not file the petition within that date because on 5-18-05 I filed a C.P.L 440.10 motion in the trial court But I had to refile the C.P.L 440.10 on 5-26-05 because the wrong copies were sent to the court. I filed the 440.10 motion to the trial court without filing my petition for federal habeas corpus because I was under the impression that my time to file the petition would be stopped until a decision on the 440.10 motion is rendered.

I am now enclosing my petition for writ of Habeas corpus along with the declaration in support of request to proceed in Forma Pauperis. And I am also asking you my was indeed stopped on the date (5-26-05) that I filed the 440.10 motion in the supreme court of the state of N.Y. County of Kings, Criminal Term Part 22; 120 Schermerhorn St. Brooklyn, N.Y. 11201. Please inform me of the proper Proceedures to Follow As soon as possible.

Thank you for your time and consideration in this matter.

CC: File

Respectfully,

Shiloh Hylton
00A5948 F2-212

Shiloh Hylton

Shiloh Hylton 00A5948
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

5-3-07

To: Clerk of US District
court Eastern district
of New York 225
Cadman Plaza East
Brooklyn, NY 11201

RE: 05-CV-4077 (NGG)

Dear clerk of the court,
                            I am writing this letter to
you in regards to my petition being amended I prev-
iously wrote you a letter asking you for permiss-
ion to amend my Habeas corpus petition, I also ask-
ed about appointment of counsel to assist me because
I am a layman, but I haven't gotten a specific on
a direct answer to those questions, another reason why
I'm inquiring about my Habeas corpus petition is because
it's been a while since I inquired back in January
and I just want to make sure that I'm doing every-
thing that I'm supposed to, meaning following all rules.
Please notify me and let me know exactly when I'll be
able to Amend my Petition Pursuant to 28:2254

because I'm not sure what to do regarding that, and also just to remind you I did receive the docket report that your court sent to me but as I mentioned earlier I didn't get any specific answers to my question.

Respectfully Submitted

Shiloh Hylton

00A5948 72-212

cc. file

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------X
SHILOH HYLTON,

                        *Petitioner,*                    **ORDER**
                                                        05-CV-4077 (NGG)
            - against -

WILLIAM PHILLIPS, Superintendent,
Greenhaven Correctional Facility,

                        *Respondent.*
-----------------------------------------------X
GARAUFIS, United States District Judge.

    Pro se petitioner Shiloh Hylton seeks a writ of habeas corpus pursuant to 28 U.S.C. §

2254. By letter dated 9/19/05 from petitioner Hylton to Judge Edward Korman, who was then

assigned to this case,[1] Hylton requested that his petition be held in abeyance so that he could

exhaust his state court remedies, specifically so that he could file a N.Y. C.P.L. 440.10 motion in

New York Supreme Court. (Docket Entry # 4). The stay was granted by Judge Korman on

October 11, 2005 under the condition that the Petitioner advise the Court within 60 days of the

denial of his application pursuant to N.Y. C.P.L. 440.10. (Docket Entry #6).

    By letter dated January 26, Petitioner Hylton informed this court that his 440.10 motion

had been denied, as had his application for leave to appeal the 440.10 decision to the Appellate

Division Second Department. Hylton further informed the court that "as [he] was going over

[his] paperwork" he discovered that he also had an unexhausted ineffective assistance of counsel

claim with respect to his appellate counsel. (See Docket Entry # 10). He now hopes to exhaust

---

[1] This case was reassigned to this court on October 21, 2005.

1

that claim by filing a writ of error coram nobis, and asserts that he did not raise this issue in his initial petition because he "wasn't aware of such an issue." Hylton requests that the stay and abeyance previously granted be extended to permit the Petitioner an opportunity to exhaust this claim.

I hereby exercise my discretion to stay this petition and hold it in abeyance while the petitioner returns to state court to exhaust this unexhausted claim. Rhines v. Weber, 544 U.S. 269 (2005). The stay is again granted under the condition that Petitioner advise the Court within thirty (30) days of the denial of his petition for writ of error coram nobis. The Clerk of the Court is directed to mail a copy of this Order to the pro se petitioner.


SO ORDERED.

Date:   February 22, 2006
        Brooklyn, New York

                                        /s/
                                NICHOLAS G. GARAUFIS
                                United States District Judge

2

Case 1:05-cv-04077-NGG  Document 15-2  Filed 07/27/07  Page 103 of 107 PageID #: 367

CLOSED, HABEAS, IFP, MJSELECT, PROSE

# U.S. District Court
## Eastern District of New York, Brooklyn (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:05-cv-04077-NGG
### Internal Use Only

Hylton v. Phillips
Assigned to: Judge Nicholas G. Garaufis
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 08/22/2005
Date Terminated: 10/31/2005
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Shiloh Hylton**

represented by **Shiloh Hylton**
00A5948
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582
PRO SE

V.

**Respondent**

**William Phillips**
*Superintendent*

represented by **KINGS COUNTY DISTRICT ATTORNEYS OFFICE - GENERIC**
Email: appealsefile@brooklynda.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NEW YORK STATE ATTORNEY GENERALS OFFICE - GENERIC**
Email: Luke.Martland@oag.state.ny.us
*TERMINATED: 01/17/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Solomon Neubort**
Kings County District Attorney
350 Jay Street
Brooklyn, NY 11201
718-250-2514
Fax: 718-250-2549
Email: neuborts@brooklynda.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2005 | 1 | PETITION for Writ of Habeas Corpus, filed by Shiloh Hylton. (Attachments: # 1 Civil Cover Sheet)(Bowens, Priscilla) (Entered: 08/25/2005) |
| 08/22/2005 | 2 | MOTION for Leave to Proceed in forma pauperis by Shiloh Hylton. (Bowens, Priscilla) (Entered: 08/25/2005) |
| 09/01/2005 | 3 | ORDER TO SHOW CAUSE, ifp granted. Respondents shall show cause why a writ of |

| | | |
|---|---|---|
| | | habeas corpus should not be issued. W/in 60 days of receipt of this order, respondents shall serve a copy of their return on the petitioner herein. Respondents shall submit such transcript and record to this Court immediately upon request. Petitioner, w/in 21 days of receipt by him or a copy of the return, shall file his reply, if any. (Ordered by Judge Edward R. Korman on 8/31/05) c/m (Attachments: # 1 2254 Petition # 2 Civil Cover Sheet)(Galeano, Sonia) (Entered: 09/01/2005) |
| 09/22/2005 | ●4 | Letter dated 9/19/05 from Shiloh Hylton to USDJ Korman, requesting that petitioner's writ of habeas corpus be held in abeyance, so that pltff may exhaust state court remedies. (Galeano, Sonia) (Entered: 09/29/2005) |
| 10/06/2005 | ●5 | Letter dated 10/03/05 from Shiloh Hylton to USDJ Korman, objecting to have USDJ Korman review petitioner's habeas corpus petition and requesting that Your Honor recuse himself from this case. (Galeano, Sonia) (Entered: 10/11/2005) |
| 10/19/2005 | ● | ORDER re 5 Letter. Ordered by Judge Edward R. Korman on Oct. 19, 2005. The clerk is directed to reassign this case by random selection. (endorsed on doc. #5) (c/m to petitioner)(Susi, PaulaMarie) (Entered: 10/19/2005) |
| 10/19/2005 | ● | Case reassigned to Judge Nicholas G. Garaufis. Judge Edward R. Korman no longer assigned to the case. (Bowens, Priscilla) (Entered: 10/21/2005) |
| 10/31/2005 | ●6 | ORDER re 4 Letter: The motion is granted. The stay is granted under the condition that petitioner advise the Court within 60 days of the denial of his 441.1.0 application. The Clerk is directed to close this case for administrative purposes. Ordered by Judge Edward R. Korman on October 11, 2005. (c/m to pro se)(Lee, Tiffeny) (Entered: 11/02/2005) |
| 11/09/2005 | ●7 | RESPONSE TO ORDER TO SHOW CAUSE by William Phillips. (Neubort, Solomon) (Entered: 11/09/2005) |
| 11/09/2005 | ●8 | AMENDED DOCUMENT by William Phillips. Amendment to 7 Response to Order to Show Cause. (Neubort, Solomon) Additional attachment(s) added on 8/15/2006 (Brown, Marc). Modified on 8/15/2006. The case number had to be modified from it read 04-cv-4077 and had to be changed to 05-cv-4077(Brown, Marc). (Entered: 11/09/2005) |
| 01/11/2006 | ●9 | Letter dated 1/9/2006 from pro se Shiloh Hylton, requesting to amend the Respondent's name to Robert E. Ercole, New Superintendent of the Facility. *Memo attached noting lack of service. *Fwd. to Judge Garaufis. (Latka-Mucha, Wieslawa) (Entered: 01/17/2006) |
| 01/31/2006 | ●10 | Letter dated 1/26/06 from Shiloh Hylton to Clerk of Court, requesting to amend pltff's habeas corpus petition and to extend the request to stay and the abeyance of such petition, which this Court previously granted. (Fwd. to USDJ Garaufis) (Galeano, Sonia) (Entered: 02/02/2006) |
| 02/22/2006 | ●11 | MEMORANDUM AND OPINION re Petitioner's request that his petition for habeas corpus be held in abeyance for exhaustion of unexhausted claim. The petitioner's request is GRANTED. The stay is granted under the condition that petitioner advise the court within 30 days of the denial of his petition for writ of error coram nobis. The Clerk of the Court is directed to mail a copy of this M&O to the pro se petitioner. So Ordered by Judge Nicholas G. Garaufis on 2/22/06. (Meltzer, Nora) (Entered: 02/22/2006) |
| 02/24/2006 | ● | Copy of Document 11 Mailed. (Lee, Tiffeny) (Entered: 02/24/2006) |
| 12/07/2006 | ●12 | Letter dated 11/30/2006 from pro se Shiloh Hylton, advising the Court of the denial of his petition for a writ of error coram nobis, submitting a copy of the 11/27/2006 Certificate Denying Leave, requesting the Court's information regarding an appointment of counsel and the date of filing petitioner's reply to Respondent's opposition, etc. W/Enclosure. *Memo attached noting lack of service. *Fwd. to Judge Garaufis. (Latka-Mucha, Wieslawa) (Entered: 12/12/2006) |

CLOSED, HABEAS, IFP, MJSELECT, PROSE

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:05-cv-04077-NGG
#### Internal Use Only

Hylton v. Phillips
Assigned to: Judge Nicholas G. Garaufis
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 08/22/2005
Date Terminated: 10/31/2005
Jury Demand: None
Nature of Suit: 530 Habeas Corpus
(General)
Jurisdiction: Federal Question

**Petitioner**

**Shiloh Hylton**

represented by **Shiloh Hylton**
00A5948
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582
PRO SE

V.

**Respondent**

**William Phillips**
*Superintendent*

represented by **KINGS COUNTY DISTRICT
ATTORNEYS OFFICE - GENERIC**
Email: appealsefile@brooklynda.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NEW YORK STATE ATTORNEY
GENERALS OFFICE - GENERIC**
Email: alyson.gill@oag.state.ny.us
*TERMINATED: 01/17/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Solomon Neubort**
Kings County District Attorney
350 Jay Street
Brooklyn, NY 11201
718-250-2514
Fax: 718-250-2549
Email: neuborts@brooklynda.org

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2005 | ●1 | PETITION for Writ of Habeas Corpus, filed by Shiloh Hylton. (Attachments: # 1 Civil Cover Sheet)(Bowens, Priscilla) (Entered: 08/25/2005) |
| 08/22/2005 | ●2 | MOTION for Leave to Proceed in forma pauperis by Shiloh Hylton. (Bowens, Priscilla) (Entered: 08/25/2005) |
| 09/01/2005 | ●3 | ORDER TO SHOW CAUSE, ifp granted. Respondents shall show cause why a writ of habeas corpus should not be issued. W/in 60 days of receipt of this order, respondents shall serve a copy of their return on the petitioner herein. Respondents shall submit such transcript and record to this Court immediately upon request. Petitioner, w/in 21 days of receipt by him or a copy of the return, shall file his reply, if any. (Ordered by Judge Edward R. Korman on 8/31/05) c/m (Attachments: # 1 2254 Petition # 2 Civil Cover Sheet)(Galeano, Sonia) (Entered: 09/01/2005) |
| 09/22/2005 | ●4 | Letter dated 9/19/05 from Shiloh Hylton to USDJ Korman, requesting that petitioner's writ of habeas corpus be held in abeyance, so that pltff may exhaust state court remedies. (Galeano, Sonia) (Entered: 09/29/2005) |
| 10/06/2005 | ●5 | Letter dated 10/03/05 from Shiloh Hylton to USDJ Korman, objecting to have USDJ Korman review petitioner's habeas corpus petition and requesting that Your Honor recuse himself from this case. (Galeano, Sonia) (Entered: 10/11/2005) |
| 10/19/2005 | ● | ORDER re 5 Letter. Ordered by Judge Edward R. Korman on Oct. 19, 2005. The clerk is directed to reassign this case by random selection. (endorsed on doc. #5) (c/m to petitioner)(Susi, PaulaMarie) (Entered: 10/19/2005) |
| 10/19/2005 | ● | Case reassigned to Judge Nicholas G. Garaufis. Judge Edward R. Korman no longer assigned to the case. (Bowens, Priscilla) (Entered: 10/21/2005) |
| 10/31/2005 | ●6 | ORDER re 4 Letter: The motion is granted. The stay is granted under the condition that petitioner advise the Court within 60 days of the denial of his 441.1.0 application. The Clerk is directed to close this case for administrative purposes. Ordered by Judge Edward R. Korman on October 11, 2005. (c/m to pro se)(Lee, Tiffeny) (Entered: 11/02/2005) |
| 11/09/2005 | ●7 | RESPONSE TO ORDER TO SHOW CAUSE by William Phillips. (Neubort, Solomon) (Entered: 11/09/2005) |
| 11/09/2005 | ●8 | AMENDED DOCUMENT by William Phillips. Amendment to 7 Response to Order to Show Cause. (Neubort, Solomon) Additional attachment(s) added on 8/15/2006 (Brown, Marc). Modified on 8/15/2006. |

| | | |
|---|---|---|
| | | The case number had to be modified from it read 04-cv-4077 and had to be changed to 05-cv-4077(Brown, Marc). (Entered: 11/09/2005) |
| 01/11/2006 | ●9 | Letter dated 1/9/2006 from pro se Shiloh Hylton, requesting to amend the Respondent's name to Robert E. Ercole, New Superintendent of the Facility. *Memo attached noting lack of service. *Fwd. to Judge Garaufis. (Latka-Mucha, Wieslawa) (Entered: 01/17/2006) |
| 01/31/2006 | ●10 | Letter dated 1/26/06 from Shiloh Hylton to Clerk of Court, requesting to amend pltff's habeas corpus petition and to extend the request to stay and the abeyance of such petition, which this Court previously granted. (Fwd. to USDJ Garaufis) (Galeano, Sonia) (Entered: 02/02/2006) |
| 02/22/2006 | ●11 | MEMORANDUM AND OPINION re Petitioner's request that his petition for habeas corpus be held in abeyance for exhaustion of unexhausted claim. The petitioner's request is GRANTED. The stay is granted under the condition that petitioner advise the court within 30 days of the denial of his petition for writ of error coram nobis. The Clerk of the Court is directed to mail a copy of this M&O to the pro se petitioner. So Ordered by Judge Nicholas G. Garaufis on 2/22/06. (Meltzer, Nora) (Entered: 02/22/2006) |
| 02/24/2006 | ● | Copy of Document 11 Mailed. (Lee, Tiffeny) (Entered: 02/24/2006) |
| 12/07/2006 | ●12 | Letter dated 11/30/2006 from pro se Shiloh Hylton, advising the Court of the denial of his petition for a writ of error coram nobis, submitting a copy of the 11/27/2006 Certificate Denying Leave, requesting the Court's information regarding an appointment of counsel and the date of filing petitioner's reply to Respondent's opposition, etc. W/Enclosure. *Memo attached noting lack of service. *Fwd. to Judge Garaufis. (Latka-Mucha, Wieslawa) (Entered: 12/12/2006) |
| 02/07/2007 | ●13 | Letter dtd. 1/29/07 from pro se Shiloh Hylton to Clerk, requesting permission to amend his habeas corpus petition in regards to his petition for a writ of error coram nobis, recently filed in the state court. (Fwd. to Judge Garaufis). (Layne, Monique) (Entered: 02/09/2007) |